**Ricky Dale KUNTSCHIK, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–009–CR.**

Court of Appeals of Texas, Corpus Christi.

June 10, 1982.

Dain P. Whitworth, Herman C. Gotcher, Austin, for appellant.

Houston Munson, Dist. Atty., Gonzales, for appellee.

Before NYE, C. J., and BISSETT and YOUNG, JJ.

## OPINION

BISSETT, Justice.

On an indictment for capital murder the appellant was found guilty of murder and assessed a punishment of 15 years in the Texas Department of Corrections.

In this appeal, the appellant brings forward five grounds of error. One ground relates to the sufficiency of the evidence, two grounds relate to the charge, one ground relates to improper impeachment of a witness, and the remaining ground relates to the admissibility of evidence.

At around 4:25 P.M. on August 13, 1976, Deputy Sheriff Kincaid, of Gonzales County, Texas, received a phone call and was told that Ed Decker had been beaten to death. He immediately went to Decker's house, arriving there around 4:30 P.M. In the living room of the house, he met appel-

lant, Decker's grandson. Appellant told Kincaid where the body was. He told Kincaid that he had checked his grandfather's pulse and that he knew how to take pulse because he had worked for Emergency Medical Services in Victoria, Texas. A representative of Emergency Medical Services testified that appellant had never been so employed.

As Deputy Kincaid entered the hallway leading to the room where the deceased lay, he observed an overturned chest of drawers. A curtain of undisturbed cobwebs extended from the wall where the chest had stood to the backside of the overturned chest. This curtain and the chest blocked the hallway in such a way that it was not possible to pass without disturbing the cobwebs. Deputy Kincaid attempted to step over the cobwebs without disturbing them but was unable to do so. A reasonable inference the jury could draw from this was that appellant did not take his grandfather's pulse as he said. If appellant had checked his grandfather's pulse the cobwebs would have been disturbed, there being no other way to reach the grandfather except by crossing the cobweb barrier.

Kincaid found Decker lying face down on the floor of his bedroom in a pool of blood. Decker had sustained extensive injuries to the back of his head. The body was stiff and cool to the touch. One of the pockets on Decker's overalls was pulled out. There was no sign of a struggle in the bedroom. A drawer from the nightstand next to the bed had been removed and was lying on the bed.

On the day after the killing, Fred Halamicek, a neighbor of Decker, found a baseball bat in a brushy area a short distance from the back of Decker's house. On the bat he observed blood stains, hair, and human skin tissue. The blood type of the blood found on the bat was later shown to be of the same type as that of the deceased. Dr. Obert, who performed the autopsy, testified that death resulted from extensive hemorrhage inside the skull and into the brain caused by a massive trauma to the back of the deceased's head. He stated that the bat fit his description of the kind of instrument that could have caused the injuries sustained by the deceased.

After the bat was found, it was turned over to Deputy Kincaid. He immediately took it to the home of Frances and Melvin Kuntschik, the parents of appellant. Frances Kuntschik is also the daughter of Ed Decker. The Kuntschik house was next door to the Decker house. The two houses were located in a rural area and stood about 300 feet apart.

In an effort to identify the bat, Kincaid requested members of the Kuntschik family, including appellant, to look at the bat. When the appellant looked at the bat, he had a shocked look on his face. He admitted ownership of the bat. He explained that on the day of the killing his mother left the house at 2 P.M. to take his aunt to town. After his mother left, he took his golf bag out to clean his clubs. The bat was kept in the golf bag. He removed the bat from the bag, swung it around a few times, and laid it against the carport of his mother's house. Appellant later told Sheriff Brzozowski that at a little after 2 P.M. he telephoned Clapuca Service Station for his mother to see if she was looking for him. When asked about this call, appellant told Sheriff Brzozowski that he made it from his parent's house. But when challenged by the Sheriff that he could not have made the call from there because his mother had been looking for him at the house, appellant then stated that he had made the call from his grandfather's house. Dr. Obert testified that the blows which caused the death of Ed Decker occurred between ten to twenty minutes before 3 P.M. Appellant told Sheriff Brzozowski that he left his grandfather's house a little after 3 P.M. on the day of the killing.

By his own admissions, appellant was present at the scene near the time when Ed Decker was killed. Appellant also admitted ownership of the baseball bat. These circumstances together with appellant's false statements concerning his employment and the taking of his grandfather's pulse and his attempted false state-

ment concerning the place from which he called his mother around 2 P.M. on the day of the killing are sufficient to exclude any reasonable hypothesis except that of the defendant's guilt. Ground of error one is overruled.

Omitting its formal parts the indictment alleged that the appellant "did then and there ... intentionally cause the death of Ed Henry Decker by hitting him with a baseball bat, and that the said Ricky Dale Kuntschik was then and there in the course of committing and attempting to commit robbery..."

Tex.Penal Code Ann. § 19.03(c) (Vernon 1974), provides that "If the jury does not find beyond a reasonable doubt that the defendant is guilty of an offense under this section, he may be convicted of murder or any other lesser included offense."

The trial court, in its charge, submitted an instruction on the lesser included offense of murder. That instruction authorized conviction if the jury found that the defendant, in causing the death of the deceased, acted "intentionally" or "knowingly."

Under ground of error two, appellant argues that the form of capital murder set out in Tex.Penal Code Ann. § 19.03(a)(2) (Vernon 1974), has two culpable mental states, namely, "intentionally" and "knowingly"; that the State elected to allege only "intentionally"; that the State should therefore have been restricted to that mental state in the instructions submitting the lesser included offense of murder; and that by authorizing conviction for the lesser included offense of murder on a theory that the defendant acted "knowingly," the charge authorized conviction upon a "theory not charged in the indictment."

Tex.Penal Code Ann. § 19.02(a)(1) (Vernon 1974) provides:

"A person commits an offense if he: intentionally or knowingly causes the death of an individual."

Tex.Penal Code Ann. § 19.03(a)(2) (Vernon 1974) provides:

"A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this Code and:

"the person *intentionally* commits the murder in the course of committing or attempting to commit ... robbery ..." (Emphasis supplied).

■ By using the term "intentionally" alone in paragraph (a)(2) of Section 19.03, the Legislature clearly intended to permit conviction only when the actor in causing the death acts with this highest degree of culpability. We hold, therefore, that a person cannot be convicted of capital murder if, in causing the death, he acts with the lesser degree of culpability described in Section 19.02(a)(1), that is, if he acts "knowingly."

■ This brings us to the question of whether murder by "knowingly" causing the death of an individual is a lesser included offense of capital murder by intentionally causing the death of an individual while in the course of committing or attempting to commit robbery. We hold that it is. Tex.Code Crim.Pro., art. 37.09 (Vernon 1979) provides that "An offense is a lesser included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Since "knowing" is a lower degree of culpable mental state than "intentional" [1], "knowing" murder can be established by the same or less than all the facts required to establish capital murder as alleged in the indictment. Since an indictment for a greater offense will support a conviction for a lesser included offense, the charge does not authorize conviction on a theory not alleged in the indictment. Ground of error two is overruled.

In ground of error three, appellant contends that the trial court erred in overruling his objection to the charge that the application clause submitting the offense of murder did not conclude with words to the effect that if the jury "did not so believe or have a reasonable doubt thereof they should find the defendant not guilty."

1. Tex.Penal Code Ann. § 6.02(d) & (e) (Vernon 1974).

On the law of reasonable doubt, the trial court gave the following general instructions:

"If you have a reasonable doubt as to whether the defendant is guilty of any degree of murder as defined in this charge, you will find the defendant not guilty."

"In all criminal cases the burden of proof is on the State and the defendant is presumed to be innocent until the defendant's guilt is established beyond a reasonable doubt; and, in case you have a reasonable doubt of the defendant's guilt you will find the defendant not guilty."

■ When these general instructions on the law of reasonable doubt are included in the charge it is not necessary to end each application clause in the manner contended by appellant. *Wilson v. State*, 140 Tex. Cr.R. 424, 145 S.W.2d 890, 892 (1940); *Mitchell v. State*, 71 Tex.Cr.R. 241, 158 S.W. 815, 816 (1913). The charge as given in this case adequately protected the rights of the appellant. Ground of error three is overruled.

■ In ground of error four, appellant contends that the trial court erred in permitting the State to impeach one of its witnesses. Mrs. Kuntschik, the mother of the appellant, testified that on the day of the killing she fed her family during the noon hour and then went to town. Upon her return she saw appellant walking across the yard of the deceased, but she could not remember the time when she made this observation. The prosecutor, over objection, was permitted to impeach this testimony by showing that Mrs. Kuntschik had previously told Sheriff Brzozowski that she had seen appellant on that day coming out of the deceased's garage at around 3 P.M. One of the preliminary facts that the trial court impliedly found as a predicate for its ruling that the State could impeach Mrs. Kuntschik was that her testimony was injurious to the State's case. *Williams v. State*, 521 S.W.2d 250 (Tex.Cr.App.1975). We hold that there is insufficient evidence to support that finding and, therefore, that the trial court erred in its ruling. A fact the State sought to establish by Mrs. Kuntschik's testimony was that appellant was at the deceased's house near the time of the homicide. This fact was material to identifying appellant as the actor. We hold that because she was unable to tie her observation to a particular time, her testimony was not in the nature of an affirmative statement which tended to disprove that fact and was, therefore, not injurious to the State's case. Ground of error four is sustained.

■ In ground of error five, appellant contends the trial court erred in admitting into evidence hair which the State represented was from the head of the deceased. This hair, SX–7, was compared with a hair taken from the baseball bat. The hair on the baseball bat was found to be human hair and to have similar microscopic characteristics with the hair of the deceased. Appellant objected to the admission of the hair because there was no evidence identifying the exhibit SX–7 as coming from the deceased's head. With this we agree. The record shows that Charles Smith, Department of Public Safety chemist, identified SX–7 as a hair sample submitted to him by Sheriff Brzozowski. Under a hearsay objection, he was not permitted to testify that SX–7 was a hair sample taken from the deceased. Sheriff Brzozowski testified that he "did not remember taking the hair samples off the deceased." He assumed that the samples had been taken by Deputy Kincaid because of Kincaid's "initials on the envelope." Deputy Kincaid was not recalled as a witness by the State to identify SX–7 as being hair which came from the head of the deceased. Other than the testimony of Charles Smith and Sheriff Brzozowski there is no other evidence in the record to identify the hair marked SX–7. Therefore, since the only testimony concerning the origin of SX–7 was hearsay, the trial court erred in introducing the exhibit, over objections, into evidence. Ground of error five is sustained.

■ This brings us to the question of whether the improper admission of the hair and the statement of Mrs. Kuntschik was harmful to the appellant. Both the exhibit

(SX–7) and Mrs. Kuntschik's testimony related directly to the main issue in the case, namely, identity of the appellant as the actor. Because of the circumstantial nature of the State's proof and appellant's alibi defense, this issue was a close and serious one for the jury. Based on our reading of the record and the probable impact of this evidence on the minds of the jury, we hold that there is a reasonable probability that both the testimony of Mrs. Kuntschik and SX–7 contributed to appellant's conviction, and, therefore, constitutes reversible error. *Esquivel v. State,* 595 S.W.2d 516, 529 (Tex.Cr.App.1980); *Wilder v. State,* 583 S.W.2d 349 (Tex.Cr.App.1979).

The judgment of the trial court is REVERSED and the cause is REMANDED to the trial court for a new trial.