Bennie Ray DUPNIK, Jr., Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–062–CR.

Court of Appeals of Texas,
Corpus Christi.

May 26, 1983.

Discretionary Review Refused
Oct. 19, 1983.

Frank M. Garza, Garza & Medina, Corpus Christi, for appellant.

Grant Jones, Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal from a jury trial wherein appellant was convicted of capital murder. Appellant, a juvenile, was sentenced by the court to life in prison, pursuant to the mandatory provisions of Tex.Penal Code Ann. 8.07(d) (Vernon Supp.1982–1983). The State's case was based on circumstantial evidence. Appellant brings ten grounds of error, one of which challenges the sufficiency of the evidence, which we will address first.

The indictment alleges in pertinent part that on or about May 25, 1978, appellant did: "then and there while in the course of committing robbery, intentionally cause the death of Gladys Fowler, by beating her with a wooden rod...."

The general rule for reviewing the sufficiency of evidence is that it will be viewed in the light most favorable to the jury verdict. However, a different test is applied when the verdict is based on circumstantial evidence; the evidence is insuf-

ficient if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused. *Sewell v. State,* 578 S.W.2d 131, 135 (Tex.Cr.App. 1979). In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged. *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr.App.1983); *Sewell,* supra at 135.

A summary of the relevant facts is in order. We note from the outset that less than one hour elapsed between the time the victim was last seen alive and the time when the appellant was apprehended.

The deceased, Gladys Fowler or "Shorty" was less than five feet tall and seventy-two years old at the time of her death. She had owned and operated Shorty's Place, a bar and pool room in Port Aransas, for about 30 years.

A tourist, Greg Nelson, testified that he went into Shorty's Place at 5:20 p.m. on May 25, 1978 to drink a beer. Shorty was the only one there. He shot a game of pool and then sat at the bar and visited with Shorty. He testified that three people came in before he left at 5:45 p.m.: a beer distributor, a large man with a dog (later identified as Shorty's son-in-law) and the appellant. The appellant was the only one remaining when Nelson left at 5:45 p.m. to go pick-up two friends who were arriving at 6 o'clock on a nearby charter fishing boat. Nelson and his two friends returned to Shorty's Place at 6:15 p.m. at which time they found the deceased lying on the floor in a pool of blood. They immediately went next door and called the police.

Nelson testified there was a brown Ford (Shorty's vehicle) parked in front of Shorty's Place when he left at 5:45 p.m. but he did not recall seeing it when he returned at 6:15 p.m. He further testified the appel-

lant was wearing a short sleeved t-shirt and had a tatoo on his left arm, which was confirmed by a courtroom demonstration. He made an in-court identification of appellant.

A.I. Blackard who owned the Shifting Sands restaurant, across the street from Shorty's Place, testified that the appellant came into his establishment at about 6 p.m., looked around and then went into the bar and drank a beer. He described appellant as wearing a white t-shirt, a brown belt, blue jeans and a cap with "Woody's Boat Basin" written on it. Finally, he observed appellant leave his place of business at around 6:05 p.m. and walk up the steps to Shorty's Place.

Mike Fisher, a bartender at the Shifting Sands testified that appellant arrived at 5:45 p.m. He served appellant a beer, and appellant left at 6:05 p.m.

Troy Bradford, 13, was riding in the back of his father's pick-up truck on May 25, 1978 when they passed by Shorty's Place in route to the Fisherman's Wharf. Bradford observed a "real sweaty" individual with curly blondish hair getting into the deceased's vehicle which was parked in front of Shorty's Place. Bradford identified appellant as the person he saw get into the car and back out "real fast", almost hitting the truck in which Bradford was riding.

Lee Motes, police dispatcher, testified that she received the initial call regarding this incident at 6:16 p.m. and a call at 6:30 p.m., telling her that the subject (appellant) was in custody.

Officer Neil Motes was the first officer on the scene. He immediately noticed Shorty's car was missing and put out an "all points bulletin." He had known Shorty since 1950 and had never seen anyone else drive her car.

Larry Notley and his wife were traveling north on Park Road 53 when appellant, with a brown LTD parked on the side of the road, walked into the middle of the highway waiving his arms, "flagging down" the Notley's. The Notleys stopped beside appellant's vehicle which appellant later ex-

**784**

plained was his mother's car. Appellant wanted to use the Notley's jack because his wasn't working. Mr. Notley got out of his car, opened the trunk, and while digging to get the jack out of the trunk appellant bumped him out of the way and finished digging the jack out himself. Notley described appellant as "in a hurry", "nervous", "sweating" and "jumpy". Because appellant's hands were shaking so much, Notley did the majority of the work in changing the tire.

Notley testified that he observed appellant remove his t-shirt and throw it on the ground. Appellant had blood on his hands, arms, feet, face and blue jeans. Notley further observed a small nick or cut on appellant's face, but not the type cut that would produce the amount of blood that he saw on appellant.

Mrs. Notley testified that because appellant was "so sweaty and covered in blood," she inquired as to the source of the blood. Appellant responded that the jack had hit him. She then offered him a napkin with some antiseptic on it. Both Notleys testified that when appellant heard sirens, he threw the napkin in the air and ran to Shorty's car. The Notleys stayed in their car until the appellant was caught and in custody.

Officer Perkins testified that he was notified by radio at 6:25 p.m. that Shorty's car, the brown LTD, was seen travelling north on Park Road 53. Pursuant thereto, he arrived at Shorty's car at 6:30 p.m. parked beside the road. Upon seeing the officer, appellant ran to Shorty's car, got in and started the car. The officer fired a warning shot in the air. Thereafter, appellant took off down a caliche road toward the dunes. The officer fired three times at the tires of the vehicle, blowing out the left rear tire. The officer then pursued in his vehicle. Appellant's car slid to a stop at the sand dunes were he jumped out and started running into the dunes. After chasing appellant on foot for over 400 feet the officer caught and handcuffed the appellant.

Officer Titus investigated the scene at the bar. He found among other things, the cash register empty and the base of a pool stick imbedded with hair, blood and skull fragments. He found a plate of scrambled eggs under the deceased and the burner on an electric stove in the back of the bar turned on. He testified he observed blood on the cash register and on the back door. The floor, walls, and furniture surrounding the body were splattered with blood.

Dr. Rupp, the medical examiner, testified that death was a direct result of a traumatic head injury, consistent with being struck with a pool stick. He opined that the deceased was struck three times, once across the chest and twice on the head as she was falling down. Either of the blows to the head could have been fatal.

Janice Hoskins testified that both the victim and appellant had type A, 1–1 PGM factor blood. Therefore the type A, 1–1 PGM factor blood, found on appellant's t-shirt, blue jeans, cap, and the pool stick could have been from either person. She confirmed the presence of human blood on the thongs worn by appellant, on the back door and the lock.

Rose Smithey, the deceased's daughter, owned and operated the Rod and Gun Club next door to Shorty's Place. She testified that she saw her mother at least once a day. Her mother always parked her car in front of Shorty's Place, always locked the car and no one drove it except one employee, her mother and herself. The keys to the car were always kept in her mother's purse or on the back bar. Her mother banked at the Island State Bank and used the type bank bag found in the vehicle with the appellant.

The only evidence presented by appellant was a written statement made by John Smithey, before his death. John Smithey was the son-in-law of "Shorty" Fowler. He stated he went into Shorty's Place about 5:30 p.m. to show Shorty his poodle. At that time there was a white male in the bar, approximately thirty years of age with long dark hair. He called Smithey by his nickname, "Big John." Smithey left the bar at 5:45 p.m. and this person was still there when he left. He took the dog home. He returned at approximately 6 p.m. or 6:10

p.m. and parked his truck next to Shorty's car. As he crossed the street he saw a white male, approximately seventeen or eighteen years of age sitting in the driver's seat of Shorty's car, trying to start the vehicle. The young man had "long curly hair in front over his forehead," but not long on the sides, and it was not the same person who was in Shorty's Place when he left at 5:45 p.m.

■ In reviewing the evidence we find that the State has excluded every other reasonable hypothesis except the guilt of the appellant, and therefore ground of error number ten, challenging the sufficiency of the evidence is overruled.

■ Proceeding in numerical order, ground of error number one asserts that the juvenile court did not have jurisdiction to transfer appellant to district court, because the State failed to properly serve appellant's parents as required by Tex.Fam.Code Ann. 54.02(b) (Vernon 1975). We disposed of this issue in *B.R.D. v. State,* 575 S.W.2d 126 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). However, appellant here asserts our opinion was incorrect relying on *Grayless v. State,* 567 S.W.2d 216 (Tex.Cr. App.1978). The *Grayless* case is clearly distinguishable in that it involved failure to serve both the juvenile and the parents with *any* summons on the petition to certify. In this case both appellant and his parents were properly served with the original transfer petition and summons. Appellant's attorney moved for a continuance. The State then filed an amended transfer petition which was identical to the original, with the exception of the correction of the spelling of appellant's surname.. The appellant and his attorney received copies of this amended petition but appellant's parents did not. We again hold that the juvenile court had jurisdiction to proceed with the transfer hearing. *B.R.D.,* supra at 130. Appellant's ground of error number one is overruled.

Appellant's second ground of error contends he was not afforded a "full and meaningful" examining trial in violation of Tex.Fam.Code Ann. 54.02(h) (Vernon 1975),

and therefore, the indictment was void and the District Court was without jurisdiction.

■ It is well established that a three step procedure must be accomplished before a juvenile can be tried as an adult in district court: (1) transfer hearing in juvenile court, (2) examining trial in district court, and (3) indictment by a grand jury. If at any of the three steps there is a decision not to prosecute the juvenile as an adult, then jurisdiction will be resumed by the juvenile court. *Menefee v. State,* 561 S.W.2d 822 (Tex.Cr.App.1977).

Once a juvenile has been transferred to the District Court for criminal proceedings (Step 2), "he shall be dealt with as an adult and in accordance with the Texas Code of Criminal Procedure, 1965." Tex.Fam.Code Ann. 54.02(h) (Vernon 1975).

■ The traditional purposes of an examining trial are the determination of: the existence of probable cause, whether bail should be allowed and the need to perpetuate the testimony of witnesses. *Menefee,* supra at 829. These purposes are the same for juveniles and adults. There is, however, an additional feature when juveniles are involved. After the examining trial the judge may remand the juvenile to juvenile court, thereby terminating the "adult" criminal proceedings. *Menefee,* supra at 829.

■ Appellant asserts that although he received an examining trial, it was not a "full and meaningful" examining trial because he was denied the right to call witnesses. Appellant relies on *Menefee v. State,* supra, where there was no examining trial at all, and *Le Blanc v. State,* 577 S.W.2d 731 (Tex.Cr.App.1979). In *Le Blanc* the district court held an examining trial but discharged the juvenile defendant because the State failed to establish probable cause. Although the juvenile was not bound over for action by the grand jury, he was indicted about four months later. The court found that the state faltered at the second vital step, holding that, an examining trial, at which probable cause is deter-

mined, is a prerequisite to an indictment being returned against a juvenile. *Id.* at 733.

The record reflects that the court heard from three state witnesses. Through their testimony it was shown that appellant was the last one seen in the bar with the deceased approximately twenty minutes before she was discovered, she was beaten to death with a pool cue and there was no money in the cash register. Appellant, when arrested shortly thereafter, had bloodstains on his clothing and was driving the deceased's vehicle which contained a money bag. Appellant's attorney requested the right to put on three witnesses explaining that he felt there was a conflict in the time elements. The court denied his request and made a finding of probable cause.

The court did not err in refusing to call appellant's witnesses because sufficient evidence had already been presented by the State to show probable cause. See *Perez v. State,* 590 S.W.2d 474 (Tex.Cr.App.1979). Appellant's second ground of error is overruled.

In ground of error number three appellant complains of the examining trial Judge's failure to grant appellant's motion to disqualify himself. Honorable George Hamilton, Judge of the 94th Judicial District Court, presided at the juvenile court hearing. Thereafter he waived jurisdiction and transferred appellant to criminal district court. Appellant's case was transferred to the 94th Judicial District Court with Judge Hamilton presiding. Appellant filed a motion for disqualification of Judge Hamilton which was granted by said Judge and an order was signed by him. However, an examining trial was set by the Court, and Judge Hamilton presided over said examining trial wherein he found probable cause. Prior to the commencement of the examining trial, appellant, in open court, again moved for disqualification of the Judge, which was denied forming the basis of this ground of error.

Appellant contends that his motion should have been granted because it was not "fundamentally fair" for the same judge to sit at both the juvenile court hearing and at the examining trial. It is argued that "Logic compels that juvenile transfer hearings and examining trials be conducted before different judges."

Appellant relies on *Guerra v. State,* 478 S.W.2d 483 (Tex.Cr.App.1972). In *Guerra,* the defendant argued that he was deprived of due process because the same judge sat as juvenile judge transferred the case, sat at the examining trial and presided at the trial on the indictment. *Id.* at 484. The same judge also appointed the grand jury commissioners who selected the grand jury panel from whom the judge chose the grand jury. *Id.* at 486. The majority found that the judge was acting within his jurisdiction at all stages and appellant was therefore not denied due process.

Appellant directs us and specifically relies on the concurring opinion wherein Judge Onion concurred in the result since the defendant made no objection at the time of trial, but noted that the policy and spirit of the statute [Tex.Fam.Code Ann. 54.02(h)] would be better served if the proceedings were conducted before different judges. *Id.* at 486. However, neither the statute nor the case law require that the examining trial must be conducted by a person different from the one who conducted the juvenile hearing. *Guerra,* supra. See *Guzman v. State,* 589 S.W.2d 461 (Tex.Cr.App.1979). Ground of error number three is overruled.

In his fourth ground of error appellant argues that the court erred in overruling his motion to set aside the capital murder indictment. Appellant contends that the indictment was fundamentally defective for two reasons. First, since appellant was sixteen years old and could not have been legally executed under Tex. Penal Code Ann. 8.07(d) (Vernon Supp. 1982–1983), he argues that the court was without subject matter jurisdiction. This contention was raised and rejected in *Allen v. State,* 552 S.W.2d 843 (Tex.Cr.App.1977).

Appellant's second contention relates to language in the indictment wherein the facts are applied to the special issues which

a jury must decide during the punishment phase of capital murder trial pursuant to Tex.Code Crim.Pro.Ann. art. 37.071(b) (Vernon 1981). The language is:

"AND THE GRAND JURY further presents that the conduct of Bennie Ray Dupnik that caused the death of Gladys Fowler was committed deliberately and with the reasonable expectation that the death of Gladys Fowler would result; that there is a probability that the defendant will commit criminal acts of violence that will constitute a continuing threat to society; and that the conduct of Benny Ray Dupnik in killing Gladys Fowler was unreasonable in response to the provocation by Gladys Fowler."

These issues relate to the penalty to be imposed. Appellant maintains that because he could not be legally executed the inclusion of this language made the indictment fundamentally defective.

 It is wholly unnecessary for an indictment to allege what the penalty is for an offense. *Bashara v. State,* 84 Tex.Cr.R. 263, 206 S.W. 359, 360 (1918); *Ortiz v. State,* 626 S.W.2d 586, 588 (Tex.App.— Amarillo 1981 d.r. ref'd). Allegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment are treated as mere surplusage, and may be entirely disregarded. *Burrell v. State,* 526 S.W.2d 799, 802 (Tex.Cr.App.1975). The above quoted allegation was unnecessary and not descriptive of that which is legally essential to the validity of the indictment and is therefore rejected as surplusage. *Ferguson v. State,* 572 S.W.2d 521, 524 (Tex.Cr.App.1978). Ground of error number four is overruled.

In ground of error number five appellant contends that the trial court abused its discretion in overruling his motion for change of venue. Appellant argues that news accounts of the killing had created such a prejudice against him that he could not obtain a fair and impartial trial. Appellant's motion for change of venue was ac-

companied by affidavits, which were controverted by the State.

*Eckert v. State,* 623 S.W.2d 359, 363 (Tex. Cr.App.1981) states the law as follows:

"The filing of the controverting affidavits raised an issue of fact which was decided adversely to appellant when his motion was overruled following a hearing on the issue. [Citations omitted]. When the trial court is presented with conflicting evidence, appellant must demonstrate an abuse of discretion on appeal. [Citations omitted]. The test to be applied is whether outside influences affecting the community climate of opinion as to a defendant are inherently suspect. [Citations omitted]. Clearly, this standard does not require that jurors be totally ignorant of the facts and issues and '. . . scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.' [Citations omitted]."

 The applicant for a change of venue has a heavy burden of proving the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. Absent such a showing, the trial judge is within the limits of his discretion in denying the change of venue. *James v. State,* 546 S.W.2d 306, 309 (Tex.Cr.App.1977).

We have considered the evidence introduced at the pre-trial hearing and the contents of the newspaper articles and find no abuse of discretion. At the hearing the testimony by the defense witnesses (one reporter and two attorneys) that the appellant could not get a fair and impartial trial was directly contradicted by the testimony of the State's witness. The evidence reflected a single, one minute-20 second television broadcast, and the newspaper articles concerning the case appear to be accurate, informative and objective, and placed there for the purpose of informing the public of current events. *Demouchette v. State,* 591 S.W.2d 488, 490 (Tex.Cr.App.1979). We hold that the trial court did not abuse its discretion in overruling appellant's motion. Ground of error number five is overruled.

788

In his sixth ground of error appellant contends that the admission of certain photographs into evidence was error, because the State failed to lay the proper predicate. The record reflects that on direct examination the State laid the proper predicate under *McFarlane v. State,* 159 Tex.Cr.R. 658, 266 S.W.2d 133, 134 (1954).

On cross-examination the witness maintained his position, that the photos were accurate reproductions of the scene. He agreed with appellant's counsel, however, that the lighting was brighter in the photographs than in the dimly lit bar[1] and in that respect only, the photos were not accurate reproductions.

Once the proper predicate was laid, any further question regarding the predicate goes to the weight rather than the admissibility of the exhibit. *Greer v. State,* 523 S.W.2d 687, 691 (Tex.Cr.App.1975). Appellant's ground of error number six is overruled.

Appellant's seventh ground of error contends that the court erred in admitting into evidence certain photographs because they were highly inflammatory and gruesome. The photographs complained of are two of the deceased, before autopsy and one of the floor showing the deceased's glasses and blood splatterings. The scene was described by the witnesses through which they were introduced. The state was required to prove that the victim was intentionally beaten to death with a wooden rod.

In *Martin v. State,* 475 S.W.2d 265 (Tex.Cr.App.1972) it was held not to be error to admit a photograph of deceased's face showing bullet holes and dried blood thereon. It was said in *Martin.* "We hold that if a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. If a verbal description of the body and the scene would be admissible, a photograph depicting

the same is admissible." Appellant's seventh ground of error is overruled.

In his eighth ground of error appellant argues that the court erred in failing to grant his motion for mistrial based on the following statement made during jury argument:

"They [the Notleys] knew something was wrong. Knew something was wrong. Both got a good look at him, spent time with him, heard him talk, talked to him. Both identified this man right here, right here, as being splattered and covered with blood, and I submit to you this was Shorty Fowler's blood. You as a jury can observe this man right here as he sits here. *I think he would like to have this cue stick in his hands right now."*

At this point appellant's counsel objected, the objection was sustained and the jury was instructed to disregard the last comment. Appellant's counsels' motion for mistrial was overruled. The prosecutor continued:

"Look at his demeanor just the way he glares at me. You can do that. You don't have to close your eyes when you look over here. Sits there and smirks."

The focus of the argument was the Notley's observations and impressions of the appellant. The prosecutor then invited the jury to observe appellant and interjected his own impression.

We think the prosecutor's statement falls squarely into the type of argument permitted in *Langley v. State,* 129 Tex.Cr.R. 254, 86 S.W.2d 755 (1935), where it was said that counsel in argument may state "the impression made upon him from an observation of [the defendant], which observation the jury had an equal opportunity to make." *Id.* at 757.

Further, the trial court instructed the jury to disregard the statement. We do not believe that the argument was such that the jury would not follow the instructions of the trial court. Ground of error number eight is overruled.

1. This greater illumination was presumably the flash from the camera, as the photographs were taken of the deceased lying inside the bar shortly after the offense.

In his ninth ground of error appellant contends that the court erred in failing to instruct the jury on the lesser included offense of murder. In determining whether a charge on a lesser included offense is required, a two-step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Cr.App.1981).

It is clear that murder is a lesser included offense of capital murder. *Ex Parte McClelland,* 588 S.W.2d 957, 959 (Tex. Cr.App.1979); *Knutschik v. State,* 636 S.W.2d 744, 747 (Tex.App.—Corpus Christi 1982 no d.r.) Appellant appears to argue that there was some evidence that appellant if guilty, was only guilty of murder because there was an issue regarding the commission of the robbery, thereby meeting the second prong of *Royster.*

The evidence showed that the cash register was empty except for the pennies. The appellant was apprehended 8.8 miles away, driving the victim's car. An Island State Bank money bag, the type of which was used by the victim and kept behind the bar, was found on the front seat of the car that appellant was driving. The money bag contained a total of $552.93 including; change (no pennies), bills and four checks made payable to either Shorty's, Shorty Fowler or cash. Several dollar bills were shown to have blood on them. There was no conflicting evidence regarding the robbery and therefore no evidence presented at trial which showed that if the appellant was guilty, he was guilty only of murder. Ground of error number nine is overruled.

The judgment of the trial court is AFFIRMED.