Rodolfo **MORALES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–86–440–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 4, 1988.

Rehearing Denied March 10, 1988.

Joseph A. Connors, III, Mark Alexander, McAllen, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Edinburg, for appellee.

Before KENNEDY, UTTER and BENAVIDES, JJ.

## OPINION

KENNEDY, Justice.

The appellant, Rodolfo Morales, was convicted for the first degree murder of Maria Covarrubias.[1] He was tried by a jury and sentenced to life in prison. We reverse and remand for a new trial.

During the month before her death, eighteen-year-old Maria Covarrubias worked as a waitress at the Texas Lounge in Edinburg, Texas. According to the testimony of her co-worker, Clara Chazaderth, and the owner of the Texas Lounge, Arnold Pena, Covarrubias was working on the night of November 17, 1985, when the appellant and Emeterio Martinez came in for a few drinks. At the time, appellant was wearing a red bandanna on his head. Covarrubias then sat down with the appellant and Martinez and shortly thereafter informed her co-worker and employer that she was leaving with them and that they were going to take her to Houston. Pena at first objected, asking Covarrubias to let him drive her home. Covarrubias, however, insisted that appellant and Martinez give her a ride. Appellant told Pena, "I'm just going to take her home." Pena then agreed and watched the three leave and drive off in a blue Lincoln Continental, which was later shown to belong to Martinez.

At around 9:00 p.m. that same evening, Luciano Martinez, the owner of the El Dorado Lounge, and one of his employees, Fidela Maldonaldo, saw Covarrubias as she

---

1. Appellant's companion, Emeterio Martinez was separately tried and convicted for the same murder. His conviction, however, was reversed by this Court in *Martinez v. State*, 736 S.W.2d 233 (Tex.App.—Corpus Christi 1987, pet. filed)

entered the El Dorado in the company of two men, neither of whom did they recognize. Both witnesses, however, noticed that one of the men was wearing a red bandana.

There is no direct evidence as to what happened to Covarrubias after she left the bar and before she was killed. The next morning her body was found in a ditch next to Hutto Road, northwest of Donna, Texas, by a U.S. Border Patrol agent. Covarrubias was shot twice in the head and twice in the stomach. In the immediate vicinity of the body, investigators recovered a red bandana, a used condom, two cigarette butts, a paper towel and two .22 caliber cartridge casings. Investigators also made a plaster cast of a fresh tire print in the immediate vicinity.

A search warrant was then issued to take blood samples from the appellant and Martinez, who were under arrest at the time for a separate offense allegedly committed on November 17. The results of a blood test revealed that appellant has blood type A, Martinez has blood type O, and both are secretors, which means that blood traces can be found in their saliva and other bodily fluids. An autopsy revealed that Covarrubias had blood type B and also was a secretor. Traces of seminal and vaginal fluid on her skirt contained blood types A, B and O. Type A was found on the bandana and one cigarette butt, Type O was found on the towel and the other cigarette butt.

The plaster cast of the tire print recovered from the scene of the crime revealed it to be a "Phillips 66 Custom PC," the same brand as the tires on Martinez's blue Lincoln Continental, which had been impounded by the police during their investigation. In addition, fibers on Covarrubias' skirt matched the carpet in that car. Investigators found a .22 magnum casing on the front seat of the car, a .22 long rifle casing on the dashboard and .22 long rifle casing in the ashtray. They found a box of unfired .22 magnums inside a toolbox in the trunk of the car.

Investigators also recovered a .22 long rifle bullet from the separate shooting incident for which the appellant and Martinez were already under arrest at the time they became suspects in the present case. The appellant and Martinez had allegedly engaged in a car chase with Javier Casillas, during which appellant shot several times at Casillas' car. The bullet in question was later recovered from Casillas' car by the police.

The items recovered from the murder scene, from Martinez's car, and from the separate shooting incident, were all tested by a DPS firearms examiner. The examiner testified that, of the three testable bullets recovered from Covarrubias' body, all were .22 magnums fired from the same gun, with six lands and grooves, inclined to the right. He testified that the bullet recovered from the Casillas car was a .22 long rifle, also fired from a gun with six lands and grooves, inclined to the right. He further testified that a gun chambered for .22 long rifle can not fire a .22 magnum bullet, but that a gun chambered for .22 magnum can fire a .22 long rifle bullet. The examiner also testified that the five casings found in the Martinez car and at the scene of the murder were fired from three separate guns: the .22 magnum casing in the front seat of the car from one gun; the .22 long rifle casings on the dashboard and in the ashtray of the car from a separate gun; and the .22 long rifle casings found at the scene of the murder from a third gun.

Finally, the prosecution offered into evidence the transcript of a tape recorded conversation with Mary Granados, a woman the appellant had been living with at the time Covarrubias was killed, who stated therein that shortly after the Covarrubias murder and the Casillas shooting the appellant had asked her to hide two guns that he owned from the police in a sofa at her house and later to sell them at a local flea market. The statement, however, was offered only to impeach Granados, who at the time of trial claimed to have forgotten the entire incident.

### Sufficiency

In points of error one through four, appellant challenges the sufficiency of the

evidence to sustain his conviction for murder.

In his first and third points of error, appellant urges this court not to consider the law of parties in analyzing the evidence, since it was neither raised in the indictment, properly included in the charge, nor found by the jury. The indictment charged that the appellant did "intentionally cause the death of an individual, MARIA COVARRUBIAS, by shooting her with a firearm." Paragraph III of the jury charge tracked the language of the indictment and paragraph V instructed the jury generally on the law of parties. The jury then found the appellant "GUILTY of the offense of murder as charged in the indictment."

■ Since the circumstantial evidence in the present case would support the theory that appellant aided Martinez in murdering Covarrubias, as well as the theory that appellant himself murdered her, the court may charge on the law of parties even if there is no such allegation in the indictment. *Williams v. State*, 676 S.W.2d 399, 401 (Tex.Crim.App.1984). Appellant complains that the court erred in failing to apply the law of parties to the specific facts of the present case. At trial, however, the appellant's only complaint about the charge was a request for an instruction on independent impulse. Since appellant neither requested a charge applying the law of parties to the facts nor objected to the omission of such a charge, the failure of the trial court to apply law of parties to the facts was neither preserved nor was it fundamental error. *Romo v. State*, 568 S.W.2d 298, 302 (Tex.Crim.App.1977).

■ Moreover, the fact that the jury found appellant "guilty ... as charged in the indictment," does not mean that they rejected his guilt as a party under the court's charge. When a jury verdict refers to the indictment, both the indictment and the charge must be read in order to deter-

mine the intent of the jury. *Lewis v. State*, 482 S.W.2d 177, 179 (Tex.Crim.App.1972); *Rodgers v. State*, 649 S.W.2d 371, 375 (Tex. App.—Austin 1983, no pet.); *see also Gonzales v. State*, 697 S.W.2d 35, 37–38 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd).

Our inquiry then is whether the evidence supports appellant's guilt either as the primary actor or as a party to the offense.

In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984). And, in a circumstantial evidence case, a conviction cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim.App.1984).

■ A summary of the evidence[2] produced at trial tending to connect appellant with the murder reveals:

1. That both the appellant and Martinez met Covarrubias at a bar and left with her under odd circumstances—Covarrubias believing they would take her to Houston, but appellant claiming that he was just going to take her home.

2. That, instead of taking her either home or to Houston, the two men apparently took Covarrubias to a remote rural area where she was killed sometime that same night;

3. That both men had sexual intercourse with Covarrubias sometime during that night;

4. That earlier the same day the appellant was carrying a .22 caliber gun which could have been used in the killing; though other guns were probably present at the time and place of the murder as well.

**2.** Granado's out-of-court statement concerning appellant's later disposal of two guns cannot be considered in determining sufficiency because it is hearsay properly objected to at trial. *Chambers v. State*, 711 S.W.2d 240, 245–247 (Tex.

Crim.App.1986); *see also Key v. State*, 492 S.W. 2d 514, 516 (Tex.Crim.App.1973). Refer to our subsequent discussion of appellant's points of error nineteen through twenty-two.

Appellant would like this court to believe there is a reasonable possibility that either Martinez or some unidentified third person killed Covarrubias without any aid or assistance from appellant. We find this to be an unreasonable hypothesis. While it is true that mere presence of the appellant at the scene of the murder is not sufficient to convict him as a party to that offense, courts may find sufficient circumstantial evidence in the events occurring before, during and after the offense to link appellant as a party. *Medellin v. State*, 617 S.W.2d 229, 231 (Tex.Crim.App.1981); *see also Romo v. State*, 568 S.W.2d 298, 303–304 (Tex.Crim.App.1978); *Flores v. State*, 491 S.W.2d 144, 145–46 (Tex.Crim.App. 1973).

In the present case, the fabrications appellant concocted to get Covarrubias to ride with him and the evidence of sexual relations between the victim and both the appellant and Martinez negates any reasonable inference that the appellant may have been merely a casual bystander during the events of the evening. The conclusion to be drawn from this evidence is that the two men, after deceiving their victim into riding with them, drove her to a secluded spot, raped her and then killed her to conceal their deed. *See Martinez v. State*, 736 S.W.2d 233 (Tex.App.—Corpus Christi 1987, pet. filed). We hold that the evidence is sufficient to sustain appellant's conviction and overrule his first four points of error.

### Extraneous Offense Evidence

In points of error five through eleven, appellant complains that the trial court erred in allowing the State to present evidence of an extraneous offense, appellant's alleged shooting at Javier Casillas' car.

■ Evidence of extraneous offenses is generally inadmissible for the reason that an accused may not be tried for some collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983). However, such evidence may become admissible upon a showing that the transaction is relevant to a material issue in the case and that the

relevancy value outweighs its inflammatory or prejudicial potential. *Id.*, 662 S.W.2d at 346; *Gonzalez v. State*, 688 S.W.2d 185, 187 (Tex.App.—Corpus Christi 1985, no pet.). The State urges that, as applied to the case at bar, the extraneous offense evidence is part of the context of the circumstantial evidence case; establishes a pattern of each taking turns in their activities; shows that appellant was carrying a weapon, and was willing to use it; and shows the appellant to be an active participant in the two men's activities that day and night.

■ An extraneous offense is relevant as a part of the res gestae or context of the offense where it is part of or closely interwoven with the primary offense. *Brown v. State*, 696 S.W.2d 913, 914 (Tex.Crim.App. 1985). In *Brown*, an attempted murder case, evidence of an assault by the defendant on one who attempted to intervene in an argument between defendant and the victim shortly before the assault on the victim was held to be part of the res gestae. However, where there is no relationship or connection between the extraneous offense and the primary offense, it is not a part of the res gestae. *Maynard v. State*, 685 S.W.2d 60, 67 (Tex.Crim.App.1985); *see also Powers v. State*, 508 S.W.2d 377, 380 (Tex.Crim.App.1974). The alleged shooting at Casillas' car is clearly separate in time and place from the murder of Covarrubias and is not a part of the events directly leading up to or explaining the murder. It is not a part of the res gestae.

Extraneous offenses have also been held admissible to create an inference that the accused's conduct and intentions during the primary offense were consistent with his course of conduct during a prior extraneous offense closely resembling the primary offense. *See Williams*, 662 S.W.2d at 347; *Gomez v. State*, 626 S.W.2d 113 (Tex.App. —Corpus Christi 1981, pet. ref'd). In the present case, the earlier shooting incident has characteristics in common with the murder. Each appears to have involved both the appellant and Martinez, and the caliber bullets fired were the same.

■ Finally, extraneous offenses have been held admissible to show the identity of the murderer. *Jones v. State,* 568 S.W.2d 847, 859 (Tex.Crim.App.1978); *Hinkle v. State,* 442 S.W.2d 728, 732 (Tex.Crim. App.1969). In the present case, the Casillas' shooting showed that, just before the murder, appellant was in possession of a gun which could have been used in the murder. Casillas also testified that appellant was wearing a bandana at the time of the shooting, which was cumulative of other testimony that appellant was wearing a red bandana closer to the time of the murder that night. Appellant's possession of the gun identifies him as a person who probably would have had the means to carry out the murder at the time it was committed. Independent evidence links the appellant to the scene of the crime and the common caliber and lands and grooves connect appellant's gun with the murder weapon. We overrule points of error five through eleven.

### Search Warrant

In points of error thirteen through fifteen, appellant complains that the trial court erred in overruling his motion to suppress evidence of blood, hair and saliva samples on the grounds that they were taken from him without his consent or probable cause and that the warrant under which they were taken did not show the magistrate to be a judge of a court of record in accordance with Tex.Code Crim. Proc.Ann. art. 18.01(c) (Vernon Supp.1987).

The Affidavit For Search Warrant was prepared by the investigating officer and stated, in pertinent part, where the body of Covarrubias had been found, that appellant and Martinez had been with her when she was last seen, that one of the men was then wearing a red and white bandana, and that:

> 3. On November 9, 1985, I.D. Officer Felipe Saenz delivered evidence, (Used Prophylactics, Red and White Bandana, Articles of Clothing), Which had been recovered from the crime scene, To the McAllen D.P.S. Lab for laboratory testing. In addi-

> tion pubic hair samples had been recovered by Dr. Ruben Santos, Pathologist, during the Autopsy.
>
> \* \* \* \* \* \*
>
> 8. I believe the the blood grouping type and secretor type of the Suspects would colloborate with one of those on the Used contraceptives and of the red and white bandana. I also believe that any foreign pubic hair detected by the D.P.S. LAB and that of the suspects are of the same.

A search warrant was then issued with the signature block of Manuel Trigo, Jr., Magistrate, Hidalgo County, Texas.

In determining probable cause for the issuance of a search warrant, we look to the "totality of the circumstances":

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed....

*Garcia v. State,* 676 S.W.2d 202, 204 (Tex. App.—Corpus Christi 1984, pet. ref'd) (quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see also Janecka v. State,* 739 S.W.2d 813 (Tex. Crim.App.1987).

■ The appellant complains that the affidavit does not provide sufficient information to show that appellant's blood type would be evidence of the offense charged. Appellant did not preserve this error, however, by failing to object on this ground at either the evidentiary hearing or the trial. Even if he had preserved his ground, we find no error.

■ Appellant relies upon *Mulder v. State,* 707 S.W.2d 908, 916 (Tex.Crim.App. 1986), where the court held insufficient an affidavit which averred merely that blood was found at the scene of the crime and that the defendant was a participant in the offense, without averring circumstances

under which defendant's blood might have been deposited at the scene. The court required a "description of events showing how [defendant's] blood might have been deposited at the scene." *Id.*, 707 S.W.2d at 916.

In the present case, however, the evidence itself provides a common-sense answer to how appellant's blood would have been deposited at the scene of the crime. Appellant's blood would have been deposited in the semen on the condom, if he is a secretor, by his use of the condom during sexual intercourse with Covarrubias. His blood likewise would be present on the bandana from the sweat off his forehead. Assuming the condom is evidence of sexual intercourse, it is also likely that appellant's pubic hairs may have been mixed with Covarrubias'. It would be ridiculous to require the investigator to state such obvious inferences in his affidavit. We hold that the affidavit provides sufficient information to support the search warrant. *See Marquez v. State*, 725 S.W.2d 217, 233 (Tex.Crim.App.1987); *Hinsley v. State*, 722 S.W.2d 476 (Tex.App.—Dallas 1986, no pet.).

▇▇ With regard to appellant's challenge to the authority of Judge Trigo to issue the warrant under the signature block of "Magistrate," rather than "County Court at Law Judge," we hold that Judge Trigo was judicially known to have been a county court at law judge in Hidalgo County and that this fact can be inferred from his signature block on the warrant. *See Ward v. State*, 523 S.W.2d 681, 683 (Tex.Crim.App.1975). If error at all, this omission is of the same nature as a typographical error, which will not vitiate a warrant. *Rougeau v. State*, 738 S.W.2d 651 (Tex.Crim.App.1987).

We overrule points of error thirteen through fifteen.

In point of error twelve, appellant complains that the trial court erred in overruling his request to instruct the jury to disregard the evidence obtained through the above warrant if they found it to have been illegally obtained. In light of the above discussion, we hold that no factual issues were in dispute regarding the search and thus no such instruction was necessary. *See* Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon 1979); *Marrs v. State*, 647 S.W.2d 286, 289 (Tex.Crim.App.1983). We overrule point of error twelve.

### *Improper Impeachment*

In points of error seventeen and eighteen, appellant complains that the trial court erred in permitting the prosecutor to impeach and/or bolster the State's own witness, Luciano Martinez, with a prior statement.

Martinez had given a statement to the police that he saw Covarrubias in his Lounge at around 9:30 p.m. on November 17, 1985, sitting with two Latin men, one whom was wearing a red and white bandana, that the two men drank beer for a while and then left with Covarrubias. At trial, Martinez only remembered seeing Covarrubias in his Lounge sometime around 9:00 p.m. that evening, that at one time she was sitting with someone, and that around the time Covarrubias left he saw a man at the door wearing a red band on his head. Over appellant's objection, the prosecutor then impeached Martinez by reading from his prior statement.

At the time of appellant's trial, Tex.Code Crim.Proc.Ann. art. 38.28 (Vernon 1965) provided:

> A party may, when testimony of his own witness is injurious to his cause, attack the testimony in any other manner except by offering evidence of the witness' bad character.

Acts 1965, 59th Leg., p. 317, ch. 722 § 1. Repealed by Acts 1985, 69th Leg., ch. 685. See now Tex.R.Crim.Evid. 607, which allows a witness to be impeached by the party calling him.

Under the law as it then existed, before a party was allowed to impeach his own witness, he had to establish the proper predicate by showing that the witness' testimony was a surprise and that it was injurious to his case. A party may not impeach its own witness unless the witness testifies to facts injurious to that party's case, and

injury has not been shown merely because the witness fails to testify as expected or to remember facts favorable to the party calling him. *Houston v. State*, 626 S.W.2d 43, 45 (Tex.Crim.App.1981); *see also Kuntschik v. State*, 636 S.W.2d ·744, 748 (Tex.App.—Corpus Christi 1982, no pet.).

■ In the present case it was error for the prosecutor to impeach Martinez with his prior statement. However, Martinez' statement was merely cumulative of the uncontested testimony of Fidela Maldonado that Covarrubias was in the El Dorado Lounge that night in the company of two young men, one of whom was wearing a red bandana. As such, it was harmless. *See Ortega v. State*, 659 S.W.2d 35, 38 (Tex.Crim.App.1983); *Cherb v. State*, 472 S.W.2d 273, 278 (Tex.Crim.App.1971).

We overrule points of error seventeen and eighteen.

■ In points of error nineteen through twenty-two, appellant complains that the trial court erred in permitting the prosecutor to impeach and/or bolster the testimony of the State's own witness, Mary Granados.

The State called witness Granados outside of the jury's presence. The State informed the trial court that the Grand Jury had investigated Granados' role in disposing of the weapons involved in the murder and the attempted murder of Casillas. The trial court granted the State's request for immunity. Granados then testified that appellant came to her apartment on the night of the shooting. She further testified, however, that she did not remember if appellant brought any guns to her apartment.

The trial court then stated that he would allow the State to call Granados and impeach her with prior inconsistent statements.

Over appellant's objections, the State called Granados to testify in the jury's presence. To just about every question concerning the incidents in question posed by the State, Granados responded that she did not remember.

Over appellant's objections, the State then impeached Granados with prior statements. The witness had earlier been ques-

tioned by prosecutors Salazar and Flores about the murder. The conversation, largely in Spanish, was tape-recorded and transcribed into both Spanish/English and full English versions. The transcript reveals in pertinent part that: appellant and Granados had recently bought two guns, one long and one short, at a local flea market, because appellant had fought with Casillas and he was going to pay for it; appellant visited Granados on the night of the murder and asked her to hide two guns in her sofa and later sell them; appellant then told her not to believe that he would surrender and tell them the whole story; he also told her that he had not had sex with Covarrubias; Granados sold the guns to an unidentified man at the flea market the next day. The transcript also suggests, from Flores' comments, that Emeterio· Martinez may have given a statement exculpating himself but not appellant, and Flores herself states that Covarrubias "was killed like an animal."

Over appellant's objection, the trial court allowed the State to introduce the transcript into evidence. The jury was given both versions as State's exhibits.

The trial court erred in allowing the State to impeach its own witness in this case. The State failed to establish the predicate surprise and injury for impeaching its own witness.

As to surprise, the State argues that appellant confuses the witness' refusal to incriminate appellant at the immunity hearing with her "amnesia" in the jury's presence. The State's argument appears to be that despite Granados' failure to incriminate appellant at the immunity hearing the State still expected Granados to incriminate appellant in the jury's presence once immunity was granted, and was surprised when she did not.

While the State's argument might logically permit a showing of surprise where a witness promised to testify once being granted immunity, the record here shows just the opposite. At the immunity hearing, Granados refused to testify as the State wanted even after being granted im-

munity. It was at that point that the trial court offered the State an opportunity to impeach her with her prior statements. There is no way the State could have been surprised when Granados testified that she could not remember various facts in the jury's presence. *See Johnson v. State,* 710 S.W.2d 599 (Tex.Crim.App.1986), *expressly disapproving Johnson v. State,* 693 S.W.2d 707 (Tex.App.—San Antonio 1985); *Goodman v. State,* 665 S.W.2d 788 (Tex. Crim.App.1984).

Second, even if the State was surprised by the witness' conduct, it has not shown injury to its case. Granados testified to no facts injurious to the State's case. Her denial of the existence of relevant facts did not state a fact injurious to the State's case. *Houston,* 626 S.W.2d at 45; *see also Kuntschik,* 636 S.W.2d 748. Therefore, it was error for the trial court to allow the State to introduce her prior inconsistent statements, and the question of harm now becomes relevant.

■ Given the circumstantial nature of this case and the highly incriminating conduct on the part of appellant as described in Granados' statement, there is a reasonable possibility that the evidence complained of might have contributed to the conviction and it was harmful. *Dickey,* 716 S.W.2d at 505; *see also Houston,* 626 S.W. 2d at 46; *Kuntschik,* 636 S.W.2d at 748–49.

Points of error nineteen through twenty-two are sustained.

Appellant's remaining points of error have been considered and are overruled.

The judgment of the trial court is REVERSED and the cause is REMANDED to the trial court for a new trial.