Donald Wayne GOOD

v.

The STATE of Texas, Appellee.

No. 773–85.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 26, 1986.

Douglas H. Parks, Dallas, for appellant.

Henry Wade, Dist. Atty. & Gilbert P. Howard, Winfield Scott & David Jarvis, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted by a jury of the offense of burglary of a habitation. V.T. C.A. Penal Code, § 30.02(a)(1) & (d)(1) (1974). Punishment was assessed by the trial court at life imprisonment in the Texas Department of Corrections. In an unpublished opinion, the Austin Court of Appeals affirmed the conviction. *Good v. State*, No. 3–84–056–CR(T) (Tex.App.— Austin, April 10, 1985). We granted appellant's pro se petition for discretionary review to determine whether the State made an improper and harmful jury argument during the guilt/innocence phase of appellant's trial. We will reverse.

Appellant burgled the complainant's home and restrained both the complainant and her 8 year old daughter by threatening them with a knife. Appellant then subjected the complainant to various forms of sexual abuse, removed money from her purse and fled.

Both the complainant and her daughter identified appellant as the intruder. Appellant presented an alibi defense, testifying that he was at his sister's apartment at the time of the offense. Appellant's sister corroborated this alibi.

During his closing argument on guilt, the prosecutor made the following statement to the jury:

Another thing, it is not a contest of backgrounds. We don't want you to convict anybody because he [appellant] hasn't got a doctor's degree or something. That doesn't matter. But I tell you one thing: You don't have to go to one day of school to sit over hear [sic] and listen to [the complainant] up there talking about all of the brutalities and indignities she went through. You don't have to go through one day of school to show a little bit of concern and emotion. You observed his [appellant's] demeanor in this courtroom and I submit to you it is a reasonable deduction that he would have reacted in some way, shown some concern. He has just sat there cold, unnerved, uncaring, just like he was like that morning [of the burglary]. That tells you a great deal about him. That has nothing to do with articulation or being able to speak or education. *No, that has to do with the fact that he is guilty and he could care less this week that he is guilty and he could care less back on June 9th, 1983.*

MR. PARKS [defense counsel] Judge, I will object to the State using a person's orderly demeanor in a courtroom or attempting to use it as evidence against him. It is not evidence and I object to it. It is outside the record.

THE COURT: I will overrule your objection.

(R. III–400–401) (emphasis added). Later, the prosecutor again focused upon appellant's demeanor:

We have heard from the evidence in this case what kind of man your are dealing with, and, you know, it was interesting that Mr. Parks [defense counsel] got up here and talked about, "It is terrible, it is tragic, it is brutal and we all feel sorry for [the complainant]. Anybody would be able to sympathize, would be able to have some concern for what she went through." Why in the world didn't we see any of that in his [appellant's] de-

meanor over here? I mean he is conceding—

MR. PARKS: Judge, I will again renew my objection as to what demeanor he expects a person on trial to exhibit. I object to his using orderly disposition and demeanor in this courtroom against him.

THE COURT: The same ruling, and the Court will note your exception.

MR. JARVIS [prosecutor]: You know, you can be orderly and yet show something on your face.

(R. III–406–407).

The Court of Appeals, citing *Langley v. State*, 129 Tex.Cr.R. 254, 86 S.W.2d 755 (1935), held that the prosecutor had properly stated his impression of appellant's demeanor on the witness stand, an observation that the jury had an equal opportunity to make. *Good*, supra, at 3–4. In addition, the Court of Appeals noted that the prosecutor may draw "reasonable, fair, and legitimate" inferences from the evidence, including inferences based upon the jury's observations of appellant's demeanor. *Id.*, at 4.

Appellant agrees that "the jury was free to observe his demeanor while he testified as an aid in judging his credibility. However, to allow the State to attempt to attach probative force, at the guilt-innocence stage, to an accused person's orderly demeanor and conduct while the complainant testifies is as harmful as commenting on a failure to testify, itself." Appellant's Petition, at 15. We agree.

Proper jury argument must fall within at least one of the following four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel or (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Cr.App.1973). These narrow areas of argument were emphasized after this Court noted that an "alarming number of improper arguments" had been made, requiring numerous reversals of convictions. *Id.*[1]

---

**1.** Our concern over improper jury arguments has not diminished. See, e.g., *Everett v. State*,

707 S.W.2d 638 (Tex.Cr.App.1986); *Lomas v. State*, 707 S.W.2d 566 (Tex.Cr.App.1986); *Robin-*

The prosecutor's jury argument in the instant case focused upon appellant's demeanor during the guilt stage of the trial.[2] At first, the prosecutor focused upon the demeanor appellant exhibited during the complainant's testimony, characterizing it as "cold, unnerved, uncaring." The prosecutor then focused upon the demeanor appellant exhibited during his own testimony, characterizing it as unsympathetic. In both instances, the prosecutor argued that appellant's demeanor inferred his guilt. We fail to see how such an argument falls within any of the acceptable categories of jury argument listed in *Alejandro*, supra.

### (1) Summary of the Evidence

During jury argument, a party may allude to a *testifying* witness' demeanor if the jury had an equal opportunity to observe the witness. *Langley*, supra. In *Langley*, supra, this Court found "no vice" in the following argument:

> Gentlemen of the jury: I don't know of any man whose face shows honesty and is as void of malice aforethought than Otto House's [the victim]; on the other hand, I never saw a face that was as aggressive and was hunting trouble as that of defendant.

*Id.*, at 757. This Court specifically noted that both the victim and the defendant had testified and that the jury had an opportunity to observe their faces as they testified. *Id.* (opinion on rehearing). As such, the witnesses' demeanor was properly in evidence. Cf. *Coyle v. State*, 693 S.W.2d 743, 746 (Tex.App.—Dallas 1985) (Sparling, J.,

concurring) (wondering how an act of a defendant in open court gets into the record). *Langley*, therefore, only supports the narrow principle that a party may allude to, during argument, the demeanor of a *testifying* witness if the jury had the same opportunity to observe the demeanor during the witness' testimony. See *Reynolds v. State*, 505 S.W.2d 265, 266–67 (Tex. Cr.App.1974) (explaining *Langley*, supra). *Langley*, supra, does not support the more sweeping proposition that a defendant's nontestimonial demeanor is evidence subject to reference or allusion.

Appellant's demeanor during the complainant's testimony was not evidence subject to reference by the prosecutor. It was not offered into evidence through any legally recognizable method of proof. Allowing the State to summarize appellant's nontestimonial demeanor impermissibly placed appellant's demeanor before the jury through the prosecutor's unsworn jury argument.[3] This sort of argument constitutes no evidence at all. Cf. *Irving v. State*, 573 S.W.2d 5 (Tex.Cr.App.1978); *Lopez v. State*, 500 S.W.2d 844 (Tex.Cr.App. 1973).

■ Admittedly, appellant's demeanor during his own testimony was properly in evidence by the mere fact that it was a part of his sworn testimony. We can presume that the jury had an equal opportunity to observe his demeanor. Therefore, appellant's testimonial demeanor could be allud-

son v. State, 701 S.W.2d 895 (Tex.Cr.App.1985); Gomez v. State, 704 S.W.2d 770 (Tex.Cr.App. 1985).

**2.** Appellant testified during guilt/innocence in the instant case, and the State's improper argument came during argument on guilt/innocence. Therefore, no issue is raised relative to the State using appellant's demeanor to make an improper comment on appellant's failure to testify. Cf. *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex.Cr.App.1984), (reference to defendant's demeanor constituted comment on his failure to testify during punishment phase of trial). But see and cf. *Jones v. State*, 693 S.W.2d 406 (Tex. Cr.App.1985).

**3.** We acknowledge that the jury may nonetheless have observed appellant's general courtroom behavior and drawn some conclusions from that behavior.

> [However,] [t]hat the jury witnesses the courtroom behavior in any event does not make it proper for the prosecutor to tell them, with the court's approval, that they may consider it as evidence of guilt. What the jury may infer, given no help from the court, is one thing. What it may infer when the court in effect tells it that the courtroom behavior of the accused constitutes evidence against him is something altogether different.

*United States v. Wright*, 489 F.2d 1181, 1186 (D.C.Cir.1973).

ed to by the State in final argument on guilt.

### (2) Reasonable Deduction From the Evidence

The State referred to appellant's demeanor and asked why appellant had not shown some sympathy for the sexual abuse suffered by the complainant. From that observation, the State inferred appellant's guilt. The question then presented is: what logical connection exists between the absence of overt sympathy and the presence of guilt, particularly in view of appellant's plea of not guilty and his presentation of an alibi defense?

A defendant's nontestimonial demeanor is irrelevant to the issue of his guilt. See *Wright,* supra. By partially focusing the jury's attention upon appellant's nontestimonial demeanor, the State invited the jury to convict appellant on the basis of his irrelevant nontestimonial demeanor rather than evidence of his guilt.[4]

Inferences drawn from testimonial demeanor, like inferences drawn from evidence generally, must be "reasonable, fair, and legitimate."[5] *Vaughn v. State,* 607 S.W.2d 914, 922 (Tex.Cr.App.1980) (approving prosecutor's argument that witness' crying expressed his fear of defendant). See also *Felton v. State,* 659 S.W.2d 482, 485 (Tex.App.—Dallas 1983, pet. ref'd) (approving prosecutor's reference to witness' "convincing" and "sincere" testimony). "However, where the chain of inferences stemming from such observations is too long and contains too many gaps, then verbalizing such impressions formed by observation is impermissible." *Jordan,* supra,

at 948 (disapproving prosecutor's argument that he observed needle tracks on defendant's arms).

Appellant testified that he could not have been the intruder into the complainant's home because he had been at his sister's apartment at the time of the offense. Thus it is not surprising that appellant would show no emotion or remorse throughout his trial. Appellant's neutral conduct was entirely consistent with his alibi defense. For the State to argue that appellant was guilty because he presented no overt signs of sympathy is not a reasonable deduction from the evidence.

The State, of course, could comment upon the credibility of appellant's alibi testimony. See *Levingston v. State,* 651 S.W.2d 319, 323 (Tex.App.—Dallas 1983, pet. ref'd) (per curiam). However, in the instant case, that was not the tenor of the State's comments. Instead, the State's comments directly encouraged the jury to find appellant guilty because, *inter alia,* he had not openly expressed sympathy for the complainant. Such a comment is an invitation for the jury to convict a defendant based on rank speculation of bad character rather than evidence of guilt. Cf. *Wright,* supra.

The prosecutor's argument in *Langley,* supra, concerning the defendant's demeanor contains the same defect. What logical connection exists between a defendant's "aggressive" face and his guilt? Does a face that seems to be "hunting trouble" constitute evidence of guilt? Certainly not. In fact, such an argument comes even closer to asking the jury to convict a defendant because of his appear-

---

**4.** In *Dickinson,* supra, this Court suggested, through dicta, that the nontestimonial demeanor of a defendant might be subject to comment by the State if it indicates some sort of misbehavior. *Id.,* at 323. While that proposition *might* have some validity during the punishment phase of the trial if properly introduced into evidence, see *Jones,* supra, it does not extend to the guilt phase of the trial. Use of a defendant's behavior in the courtroom to establish guilt violates the fundamental requirement that a defendant be convicted on relevant evidence.

**5.** In *Jordan v. State,* 646 S.W.2d 946, 948 (Tex. Cr.App.1983), this Court noted that arguments based upon a witness' demeanor "must be reflected in the record or be of such common occurrence that its recognition requires no expertise." That statement recognizes that some inferences, although perhaps reasonably derived from courtroom demeanor, may only be made by experts. See *Reynolds,* supra (disapproving prosecutor's comment that defendant appeared to be "coming down from an addictive drug.")

ance or character rather than evidence of guilt. To the extent that *Langley, supra,* supports the conclusion that a reasonable inference of guilt may be drawn from neutral, orderly courtroom demeanor, it is overruled.

■ We find that the State's argument in the instant case was improper. First, it focused on neutral or passive conduct that was not in evidence and compounded that error by using the neutral or passive conduct to make an unreasonable inference of guilt. Second, while a portion of the prosecutor's argument alluded to conduct properly in evidence, it made an unreasonable inference of guilt from that evidence. Third, the argument was not invited. Appellant's counsel merely acknowledged complainant's tragic experience. By doing so, he did not invite the State to engage in unsworn speculation about appellant's courtroom demeanor. Fourth, the argument plainly was not a plea for law enforcement.

An improper argument constitutes reversible error if, in light of the record as a whole, it is extreme or manifestly improper, or if it injects new facts, harmful to the accused, into the trial proceedings, or if it is violative of a mandatory statute. *Brandley v. State,* 691 S.W.2d 699, 713 (Tex.Cr.App.1985). We also note that a trial court, by overruling an objection to an improper argument, puts "the stamp of judicial approval" on the improper argument, thus magnifying the possibility for harm. Cf. *Burke v. State,* 652 S.W.2d 788, 790 (Tex.Cr.App.1983).

In the instant case, the prosecutor invited the jury to speculate upon appellant's neutral or passive courtroom demeanor to find him guilty. That argument injected new facts into the proceeding and harmed appellant by encouraging the jury to find him guilty because of his attitude or character. In addition, the prosecutor unreasonably inferred guilt from appellant's lack of overt sympathy for the complainant while he (appellant) was on the witness stand. That argument was manifestly improper because it encouraged the jury to base evidence of guilt upon appellant's attitude or character. Given the fact that the trial court overruled appellant's specific and timely objection, thus implicitly placing its imprimatur on the State's argument, we are compelled to say that the argument constituted reversible error.[6]

The judgments of the Court of Appeals and the trial court are reversed, and the cause is remanded to the trial court.

W.C. DAVIS, J. concurs in result.

ONION, Presiding Judge, concurring.

I concur in the result reached by the majority only based on the particular facts of this particular case.

WHITE, J., joins this opinion.

---

**6.** Not surprisingly, Judge Teague believes that the majority opinion does not go far enough by simply reversing the instant conviction. In his concurring opinion, Judge Teague confesses that his prior opinions were wrong to suggest that unruly testimonial demeanor was subject to comment, see *Dickinson, supra,* and *Jordan, supra,* and encourages the majority to give prosecutors "specific guidance" on arguing testimonial demeanor in the future.

Perhaps Judge Teague should focus some of his researching energies upon the historical principle of judicial restraint. He would find that appellate courts are not policy-making bodies that formulate broad legislative guidelines to satisfy an electorate. Instead, he would find that they are decision-making bodies, restricted to deciding properly preserved and raised questions of law based upon specific facts.

For example, this Court recently decided that the Self-Incrimination Clause in Article I, § 10, of the Texas Constitution was not offended when a defendant's refusal to submit a breath sample was used against him at his trial. *Thomas v. State,* 723 S.W.2d 696 (Tex.Cr.App.1986). In his dissenting opinion to that decision, Judge Teague bemoaned the majority's failure to address the application of the Due Course of Law Clause in Article 1, § 19, of the Texas Constitution, while admitting that the defendant had not made an objection at trial or even raised the ground in his petition for discretionary review. Nonetheless, Judge Teague accused the majority of short-circuiting the defendant's constitutional claim by not reaching the due process issue. Judge Teague can only write such undisciplined criticism by ignoring the restraint properly exercised by an appellate judge. The majority declines to join such unbridled decision-making.

**CLINTON, Judge, concurring.**

While I join the opinion of the Court, I doubt that the line it attempts to draw for counsel in referring to "demeanor of a *testifying* witness" is "bright" enough.[1] In this, it seems to me, this Court must be careful, cautious and precise in terms.

For both this Court and the Austin Court of Appeals, *Langley v. State*, 129 Tex.Cr.R. 254, 86 S.W.2d 755 (1935), is the common genesis of notions of propriety in alluding to "demeanor of a testifying witness." The opinion of this Court reads *Langley* as supporting *only* "the narrow principle that a party may allude to ... the demeanor of a *testifying* witness if the jury had the same opportunity to observe the demeanor during the witness' testimony." [2]

Yet, neither opinion in *Langley* speaks of "alluding to testimonial demeanor." Rather, writing for the Court on original submission, Judge Hawkins "perceive[d] no vice in the argument" quoted at page 736 of the opinion by Judge Campbell, because:

"Both House and appellant had been before the jury while testifying, and the district attorney seemed to have been stating the *impression made upon him* from an observation of them, which observation the jury had equal opportunity to make."

*Id.*, 86 S.W.2d at 757. On rehearing Judge Lattimore found "manifest" that the jury has the same opportunity as the district attorney "to inspect the *faces* of appellant and the prosecuting witness;" therefore:

"[T]hat fact must show that the remarks of the state's attorney expressing *his opinion* as to the difference between the appearances of the two men could neither add to nor take from knowledge possessed by every member of the jury as to the appearance of said individuals."

*Id.*, at 757.

Thus given conditions presented *Langley* allowed a prosecutor to express to a jury his own "impression" or "opinion" of contrasting character reflected in faces of opposing witnesses.[3] That is not, I submit, the same exercise as "alluding to testimonial demeanor," which the Court says may be done in final argument on guilt. P. 737. Merely to allude to objective testimonial demeanor that jurors could themselves observe is plainly more benign than to characterize demeanor according to a partisan impression or opinion. The Court finds as much when it comes to evaluate the critical characterization at issue here as reasonable deduction from the evidence, holding that it is not. Pp. 736–737. If such a comment is not a reasonable deduction, it cannot be an "allusion to testimonial demeanor" and should not be allowed in the first place.[4]

---

1. Emphasis in original opinion by Judge Campbell at page 736. All other emphasis is mine throughout unless otherwise indicated.

2. Emphasis in original opinion by Judge Campbell, page 736.

3. *Langley* was first interpreted by the Court in *Reynolds v. State*, 505 S.W.2d 265 (Tex.Cr.App. 1974), *viz:*

"Such statements may be said to be in the nature of observations requiring no expertise, and therefore incapable of adding to or subtracting from the knowledge of the jurors who had likewise viewed the witnesses."

*Id.*, at 267. Thus the Court approved a comment by defense counsel that his client "was shaking on the stand and appeared afraid;" but it found reversible error in a rejoinder statement by the prosecutor that accused was "coming down from an addictive drug," because there was no evidence that he had such an "appearance" and the Court was unable to say that kind of condition "is of such common oc-

currence that its recognition requires no expertise." *Ibid.*

See also *Jordan v. State*, 646 S.W.2d 946, 948 (Tex.Cr.App.1983) (usually permissible for attorneys to comment on *impressions* made upon them where the jury has equal opportunity to make same observation) and *Dupnik v. State*, 654 S.W.2d 780, 788 (Tex.App.—Corpus Christi 1983) PDR refused (*Langley* permits prosecutor to direct jury to look at contemporaneous *courtroom* demeanor of accused: "just the way he glares at me.... Sits there and smirks.").

4. Like Judge Teague, I am puzzled by the further treatment of *Langley, viz:*

"To the extent that *Langley,* supra, supports the conclusion that a reasonable inference of guilt may be drawn from neutral, orderly *courtroom* demeanor, it is overruled."

P. 737. In that it implicates *testimonial* appearances only, *Langley* supports the conclusion that an attorney for a party may convey to a jury his own impression or opinion of good or bad char-

With those observations, I join the opinion of the Court.

TEAGUE, Judge, concurring.

My research to date reveals that the subject of a prosecuting attorney's commenting upon a testifying witness's "demeanor"[1] has never been dealt with in depth by any appellate court in these United States. By this opinion, I do not pretend to make such an in-depth analysis of the subject; I am simply urging that the members of this Court, as well as the members of the Bench and Bar of this State, give the subject a little more in depth thought than has occurred in the past.

The prosecuting attorney did not testify in this cause.

The majority opinion by Judge Campbell correctly holds that in this instance the prosecuting attorney went too far in his jury argument when he commented upon *his* opinions, impressions, inferences, or conclusions that *he* drew from what *he* perceived of the appellant's demeanor; both when the appellant testified and when he was sitting at counsel table.[2]

In holding that the prosecuting attorney's jury comments exceeded the boundaries of proper jury argument, Judge Campbell expressly uses this Court's opinion of *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Cr.App.1973),[3] as his guiding light, and then proceeds to rule out, through a process of elimination, that the now condemned comments by the prosecuting attorney do not fall within any of the general categories approved by this Court in *Alejandro*, supra.

First, it focused on conduct that was not in evidence and compounded that error by using the conduct to make an unreasonable inference of guilt. Second, while a portion of the prosecutor's argument alluded to conduct properly in evidence, it made an unreasonable inference of guilt from that evidence. Third, the argument was not invited ... Fourth, the argument plainly was not a plea for law enforcement.

My first concern with what Judge Campbell states and holds is that he is clearly implying that if some of the prosecuting attorney's now condemned comments on the appellant's "demeanor" had been based upon admitted evidence, then they would have been proper, and not improper, comments. My second concern is with the distinction that he makes between a comment on "testimonial demeanor" and a comment on "non-testimonial demeanor". Given the fact that one or more characteristics of one's "demeanor" in the courtroom is not dependent upon whether that person testifies or not, this distinction is one without meaning. Why this fine distinction is actually meaningless is obvious if one asks himself or herself the following simple question: If the prosecuting attorney in this cause had previously stated during the times involved, "Let the record reflect," and the trial judge had stated, "The record will so reflect," and there was no dispute over what was "reflected", would this have caused the prosecuting attorney's later comments to be proper, rather than improper? I think not.

However, until recently, I would have said "I think so." I now realize, however, that this Court's rule of law that it is proper for the respective attorneys to call to the attention of the jurors that which the

---

acter traits reflected in the face of a *testifying* witness, it and its progeny should be overruled.

1. The word "demeanor" is usually defined to mean the following: "The way in which a person behaves or conducts himself; deportment; manner." *The American Heritage Dictionary of the English Language* 350 (1973 edition). However, the word can also be used to relate to a person's physical appearance or outward bearing in a court of law or court of equity. *Black's Law Dictionary* 387 (5th ed. 1979).

2. Judge Campbell sets out the improper comments on page 735.

3. In *Alejandro*, supra, this Court stated that jury argument is usually proper if it falls within one of the following general categories: (1) summation of the admitted evidence; (2) reasonable deduction from the evidence; (3) invited argument; or (4) plea for law enforcement.

jurors had an equal opportunity to observe in the courtroom, regarding a testifying witness's "demeanor", provided that such is reflected in the record or be of such common occurrence that its recognition requires no expertise, upon which the prosecuting attorney in this cause obviously relied, should be expressly overruled. This rule of law is found, either expressly or implicitly, in the following decisions of this Court: *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex.Cr.App.1984); *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983); *Jordan v. State*, 646 S.W.2d 946, 948 (Tex.Cr.App. 1983); *Langley v. State*, 129 Tex.Cr.R. 254, 86 S.W.2d 755 (1935). Cf. *Owen v. State*, 656 S.W.2d 458 (Tex.Cr.App.1983); *English v. State*, 647 S.W.2d 667 (Tex.Cr.App.1983); *Thomas v. State*, 638 S.W.2d 481 (Tex.Cr. App.1982); *Anderson v. State*, 525 S.W.2d 20 (Tex.Cr.App.1975); *Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App.1975).

The issue that needs to be addressed by this Court is whether the respective attorneys may ever directly or indirectly comment on a witness's demeanor, regardless of whether or not the witness testifies.

If one will take the time to study the subject of the respective attorneys commenting on a witness's demeanor, I believe that he will agree there is no merit to the assertion that attorneys should be free to engage in fanciful deductions about the meaning of facial expressions, body language, nuances of speech of a testifying witness, and the like. Such argument certainly does not vindicate any legally cognizable interest of which I am aware, and it most assuredly does not serve the truth-finding enterprise at all, by directly calling to the attention of the trier of the facts what he perceives of the witness's demeanor.

In this cause, the Austin Court of Appeals rejected the appellant's contention that the prosecuting attorney's comments made during jury argument were improper. In doing so, it relied upon this Court's decision of *Langley v. State*, 129 Tex.Cr.R. 254, 86 S.W.2d 755 (1935), as authority. In *Langley*, supra, this Court approved the following argument that was made by the prosecuting attorney: "Gentlemen of the jury: I don't know of any man whose face shows honesty and is as void of malice aforethought than Otto House's [the victim]; on the other hand, I never saw a face that was as aggressive and was hunting trouble as that of the defendant." In reaching its conclusion that this argument was proper, this Court reasoned that "Both House and appellant had been before the jury while testifying, and the district attorney seemed to have been stating the impression made upon him from an observation of them, which observation the jury had equal opportunity to make." (757). In making this statement, this Court did not cite any authority for its proposition of law.

By Shepard's Citator, *Langley*, supra, lay dormant in this Court's bowels until *Reynolds v. State*, 505 S.W.2d 265 (Tex.Cr. App.1974), was decided by this Court; approximately 26 years later. Interestingly, *Langley*, supra, was used as authority in that case to reverse, not affirm, the defendant's conviction. In *Reynolds*, supra, this Court held that it was permissible for the defendant's attorney to argue the following: "As you can see, he [the defendant] is afraid now. He was shaking on that stand. So, he is capable of fear ...", because such was "in the nature of an observation requiring no expertise, and therefore incapable of adding to or substracting from the knowledge of the jurors who had likewise viewed the witnesses." (267). This Court also held that such argument did not invite the following response by the prosecuting attorney: "I believe it's a reasonable deduction from the evidence that this man is coming down from an addictive drug", because "There was no evidence that appellant had the appearance of one 'coming down from an addictive drug,'" and the Court was unable to say that " 'coming down from an addictive drug' is of such common occurrence that its recognition requires no expertise. Cf. *Smithhart v. State*, Tex.Cr.App., 503 S.W.2d 283 (1973). Consequently, *Langley* does not apply. The prosecutor's comments amounted to

the injection of new evidence, constituting reversible error." (267).

Given the facts that are set out in *Smith-hart v. State*, supra, and contrary to what was asserted in *Reynolds*, supra, it is not sufficiently analogous to warrant a "Cf."

Although I authored *Jordan v. State*, 646 S.W.2d 946 (Tex.Cr.App.1983), for the Court, in which it was stated that "a prosecuting attorney, like his counterpart, is entitled to call to the attention of the jurors what they had an opportunity equal to his to observe," I now concede that this Court may have left a false impression by holding that if whatever is stated by the prosecuting attorney does not require any expertise, then comment on the witness' "demeanor" can be made; otherwise, if expertise is required, then such a comment is improper. The flaw in this holding rests in the fact that whatever "demeanor" or deportment a testifying witness might exhibit is important only to the eye of the beholder, and whatever such means most certainly does not require any expertise-as it means whatever the beholder wants it to mean.

Judge Campbell, in holding that the prosecuting attorney's comments in this cause were not a reasonable deduction from the admitted evidence, and perhaps implicitly acknowledging that most us do not have pretty faces, expressly states that "there is no logical connection between a defendant's 'aggressive' face and his guilt," and that "a face that seems to be 'hunting trouble' [does not] constitute evidence of guilt." His opinion for the Court also holds: "To the extent that *Langley*, supra, supports the conclusion that a reasonable inference of guilt may be drawn from neutral, orderly courtroom demeanor, it is overruled."

But, "to what extent" is *Langley*, supra, still alive? If the prosecuting attorney says, "Let the record reflect," and the trial judge states, "The record will so reflect," and there is no dispute over this, will *Langley*, supra, support a later comment by the prosecuting attorney on this aspect of the case? I think not.

It has long been thought by many of us that this "silent evidence", i.e., the demeanor of a testifying witness, is never immaterial or irrelevant to the decision of the trier of fact in deciding whether to believe all, part, or nothing of what the witness says, even when such was not formally offered or admitted into evidence. It was perhaps this belief that caused the prosecuting attorney to argue as he did in this cause.

However, when the prosecuting attorney argued as he did in this cause he may also have been relying upon a recent decision by the Dallas Court of Appeals, see *Dickinson v. State*, 667 S.W.2d 576 (Tex.App.—Dallas 1984), which had relied upon this Court's decision of *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983), as authority for holding that it was permissible for the prosecuting attorney in that cause to comment on the defendant's failure to affirmatively express "remorse," "shame," or "pity" towards or for his victim, even though the defendant did not testify at the stage of the trial in which the remarks were made. However, this Court, in its *Dickinson v. State* opinion, see 685 S.W.2d 320, reversed the court of appeals, holding that such argument constituted a comment on the defendant's failure to testify. This Court also clarified the holding that it made in *Hawkins v. State*, supra. This Court construed the prosecuting attorney's comment that was made in *Hawkins*, supra, as "amounting to little more than what had been before [the jurors themselves] to witness, namely, that the defendant was not interested in his trial, which was a logical inference one might draw from a defendant who slept during his trial." This Court also expressly pointed out in its *Dickinson*, supra, opinion that the prosecuting attorney's comments must be limited to "proper expressions upon the appellant's courtroom demeanor".

It is now apparent to me that this Court, in condemning the above arguments made by prosecuting attorneys that concerned the defendant's "demeanor," has seen fit to view, not the whole sky, but only a small galaxy in the sky.

Given the fact that a trier of fact may rely in reaching his or decision or verdict upon conclusions or inferences about a testifying witness's appearance, his dress, his manner of testifying, his deportment in the courtroom, etc., and is certainly not prohibited from doing so by the provisions of Art. 38.04, V.A.C.C.P., where should we draw the line on what is and what is not proper comment by the prosecuting attorney on a testifying defendant's "demeanor"? Or, can we draw such a line? Is an all out prohibition the only solution?

Judge Campbell's opinion for the Court is, up to a point, well reasoned and well written. The flaw in his opinion is that, except in this given instance, and the ones he specifically refers to, it does not give prosecuting attorneys of this State much guidance as to what will, in commenting on a testifying defendant's demeanor, be permissible. In short, Judge Campbell advises prosecuting attorneys of this State that they cannot repeat what occurred in this cause, but, other than generalizations, he has not given them any specific guidance in this area of the law as to what they might argue in future cases regarding a testifying defendant's demeanor. Of course, innovative and conscientious prosecuting attorneys are always seeking to find the line that they must not cross. See Judge Campbell's footnote 1, page 735 of his Opinion. As long as this Court does not clearly draw the line that they must not cross, there is nothing wrong with this kind of experimentation.

When a witness testifies, his demeanor is certainly a circumstance to be considered by the trier of fact in assessing his credibility, at least according to traditional notions of Anglo-American Jurisprudence. Wigmore even informs us that demeanor is often viewed by the trier of fact as an "assumed fact". See *Wigmore on Evidence*, 1st & 2nd Ed., Sections 946 and 1395. I prefer to call it "silent evidence." However, regardless of what one might call it, it is or should be obvious to anyone that demeanor of a witness is a poor indicator of a witness's credibility, that nonverbal clues are not rationally related to a con-

sciousness of falsehood, and that ordinary persons are better or just as able to detect prevarication as are the attorneys. These propositions are supported by a recent study, see Maier & Thumber, "Accuracy of Judgments of Deception When an Interview is Watched, Heard and Read," 21 *Personnel Psychology* 23 (1968), in which the conclusion was drawn that persons who read a cold, naked record are better able to detect lies than if they actually observe the witness's demeanor. See also *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), in which the Supreme Court of the United States reversed the trial court because in instructing the jury the trial judge commented as follows regarding the defendant's demeanor: "You may have noticed ... that he [the defendant] wiped his hands during his testimony. It is a rather curious thing, but that is almost always an indication of lying. Why it should be so we don't know why, but that is the fact." In condemning the instructions, the Supreme Court pointed out that statements such as " 'no one who was conscious of innocence would resort to concealment,' 'the wicked flee when no man pursueth, but the innocent are as bold as a lion,' and 'All men would say that. No man created would say otherwise when confronted by such circumstances,' " had been previously condemned by that Court. The Supreme Court characterized such comments as amounting to giving the jury additional unsworn testimony. The fact that the trial judge had also advised the jury that they were not bound by his comments did not cure the error.

Many years ago, Jerome Frank, in his work *Law and the Modern Mind* (1931), informed the legal world what it probably already knew; that the elusive and incommunicable evidence of a witness's deportment or demeanor while testifying in a court of law or court of equity may be the most important single thing that the trier of fact uses in judging the credibility of that witness, rather than the actual testimony that he gives. Thus, such things as the age of the witness, his physical appear-

ance and health, whether he has the brazen face of the liar or the glibness of the schooled witness reciting a lesson, or the itching overeagerness of the swift witness, the tone of his voice, his hesitation or readiness with which his answers are given, his facial expressions, his gestures, his zeal or lack of zeal when testifying, his bearing or lack of bearing, his yawns, shrugs, sighs, how he parts his hair, whether he crosses his legs or arms, pulls on his ear lobes, picks at his nose or eyebrows, or how he places his hands on his body, whether he repeatedly wipes his hands or his brow, whether he has furtive or meaningful glances when testifying, the pitch of his voice, his self-possession or embarrassment, his air of candor or seeming levity, or the lack thereof, his calmness, the scant or full realization of the solemnity of an oath, or his carriage and mien, etc., either singularly or collectively, give meaning to the saying "Truth does not always stalk boldly forth naked, but modest withal, in oral abstract in nooks and crannies visible only to the eye of the fact finder who hears the case." *Rains v. Rains*, 17 N.J.Misc. 310, 8 A.2d 715 (New Jersey Ct. of Chancery 1939). Also see Feldman & Chesley, "Who is Lying, Who is Not: An Attributional Analysis of the Effects of Nonverbal Behavior on Judgments of Defendant Believability," 2 *Behavioral Sci. & L.* 451 (1984); Le Van, Noverbal Communication in the Courtroom: Attorney Beware, 8 *L. & Psychology Rev.* 83 (1984); Saxe, Psychiatry, Psychoanalysis, and the Credibility of Witnesses, 45 *Notre Dame L.Rev.* (1970); Maier & Thumber, supra.

From human experience, we have also learned that what a fact finder has observed of a testifying witness may seldom, if ever, be articulated into any systematic statement. All of us now know that " 'The tongue of the witness' is not the only organ for conveying testimony. Yet, it is only [his] words that can be transmitted to the [fact finder], while the story that is told by the manner, by the tone, by the eyes, may be lost to all but him who observes the witness on the stand [who has the responsibility of judging the witness's credibility]."

Frank, supra; *Rains v. Rains*, supra. Cf. Maier & Thumber, supra.

Although a juror should never base his decision or verdict on other than the admitted evidence, he is nevertheless entitled, in judging the credibility of a testifying witness, to take into consideration any or all of the above, and draw therefrom whatever inferences he might desire, but such perceptions of a defendant's demeanor should not be clouded by courtroom comments from attorneys.

What about an instruction from the trial judge to the jury that it might or might not consider such a thing as the demeanor of a testifying witness, like an instruction on the defendant's failure to testify? In this instance, the trial judge did instruct the jury, inter alia, that "You are the exclusive judges of ... the credibility of the witnesses and of the weight to be given their testimony ..." Thus, implicitly, the trial judge told the jurors that in reaching their verdict, they were free to take into consideration the demeanor of the witnesses who testified. This is because the noun "credibility" embraces the noun "demeanor".

The Supreme Court of the United States has wrestled with whether the giving or not giving of an instruction on the defendant's failure to testify violates the Federal Constitution.

In *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court held that comment on the defendant's failure to testify, by both the trial judge's instructions and the prosecuting attorney's argument, violated the Self-Incrimination Clause of the Fifth Amendment which was made applicable to the States by the Fourteenth in *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). In so holding, the Court expressed the following view: "What the jury may infer, given no help from the court, is one thing. What it may infer which the court solemnizes the silence of the accused into evidence against him is quite another."

Justice Stewart, in the dissenting opinion that he filed in *Griffin*, supra, raised the

following question: "How can it be said that the inferences drawn by a jury will be more detrimental to a defendant under the limiting and carefully controlling language of the instruction here involved than would result if the jury were left to roam at large with only its untutored instincts to guide it, to draw from the defendant's silence broad inferences of guilt?," and concluded that "Whether the same limitations would be observed by a jury without the benefit of protective instructions shielding the defendant is certainly open to real doubt," and "Without limiting instructions, the danger exists that inferences drawn by the jury may be unfairly broad."

The Supreme Court next broached the subject in *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), in which it held that the giving of an instruction on the defendant's failure to testify, over objection, at the guilt stage of the trial, did not violate any provision of the Federal Constitution. In reaching its holding, the Court drew a distinction between giving an instruction that was adverse to the defendant and one that was protective of the defendant. In doing so, it rejected the petitioner's contention that such an instruction actually encouraged jurors to draw adverse inferences from his failure to testify, and also rejected the contention that the instruction was like "waiving a red flag in front of the jury." It so holding, although conceding that "It may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection," it emphasized that the issue before the Court was whether the giving of such an instruction violated the Federal Constitution, and not whether one need not be given. In the dissenting opinion that he filed, Justice Stevens, quoting from *State v. Cleaves*, 59 Me. 298, 301 (1871), pointed out that "the defendant's silence will be like 'the sun ... shining with full blaze on the open eye,' but in other trials-perhaps when the whole story has been told by other witnesses or when the prosecutor's case is especially weak-the jury may not focus on the defendant's failure to testify." He concluded: "For the judge or prosecu-

tor to call it to the jury's attention has an undeniably adverse effect on the defendant. Even if jurors try faithfully to obey their instructions, the connection between silence and guilt is often too great and too natural to be resisted. When the jurors have in fact overlooked it, telling them to ignore the defendant's silence is like telling them not to think of a white bear."

The Supreme Court, in *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), expanded on what it had previously stated, and held that a defendant has a Federal Constitutional right to a requested instruction on his failure not to testify. In reaching that conclusion, the Court observed that jurors, "without limiting instructions, ... can be expected to notice a defendant's failure to testify, and to speculate about incriminating inferences from a defendant's silence." The Court pointed out: "No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum."

This Court in *Brown v. State*, 617 S.W.2d 234 (Tex.Cr.App.1981), adopted the principles enunciated in the above cases and held that in the event that a defendant, who elects not to testify at the punishment stage of his trial, requests that an instruction on his failure to testify be given, such must be given.

Given the fact that the word "demeanor" encompasses an almost endless number of things, many of which a juror might not be able to articulate, and the fact that I believe that most jurors have an adequate and sufficient understanding of the noun "credibility", i.e., "Worthiness of belief; that quality in a witness which renders his testimony worthy of belief," *Black's Law Dictionary* 330 (1979 ed.), I believe at this time that a jury instruction on "demeanor" should never be given, even when requested. Also see Justice Stevens' views, supra.

However, whether jurors should be given a limiting instruction on the demeanor of a testifying witness is not the question before us. The question that this Court should address is whether the prosecuting attorney or the defense attorney may ever directly comment thereon.

In this instance, the State posits that because *a juror* is entitled to make reasonable inferences from the demeanor of a testifying witness, it must follow that a prosecuting attorney may also suggest to the juror which reasonable inferences he believes might be drawn from the demeanor of the witness. I disagree. To say that a juror is free to draw inferences in his own mind from a witness's demeanor, to draw upon this "silent evidence" if you please, is not the same thing as saying that the prosecuting attorney is free to directly comment on whatever inferences *he* might draw from the witness's demeanor, as *he* perceives it. Such actually amounts to unsworn testimony.

Given the above, I am willing to let jurors continue to give a testifying witness's demeanor whatever weight they desire. I am unwilling, however, to permit prosecuting attorneys, or defense attorneys for that matter, to directly counsel jurors that they may act as irrationally as they like when it comes to commenting on the specifics of body language of a testifying witness or that they might suggest to jurors that they can directly consider irrational conclusions of the attorney that *he* draws from such body language. To permit such comments actually amounts to invading an area that has long been reserved exclusively to the jurors themselves, and no one else. Thus, prosecuting or defense attorneys should never poach on that territory which is reserved exclusively for the triers of fact; they should never comment directly or indirectly on a testifying or non-testifying witness's demeanor. To do so actually amounts to giving unsworn testimony, or directly commenting on unadmitted, irrelevant evidence.

For all the above reasons, I only concur in the result that the majority opinion reaches.