# NO. 12-19-00398-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***MICHAEL RAY ORR,*** *APPELLANT* | *§* | ***APPEAL FROM THE 241ST*** |
| ***V.*** | *§* | ***JUDICIAL DISTRICT COURT*** |
| ***THE STATE OF TEXAS,*** *APPELLEE* | *§* | ***SMITH COUNTY, TEXAS*** |

## *MEMORANDUM OPINION*

Michael Ray Orr appeals his conviction for continuous sexual abuse of a young child. In four issues, Appellant challenges the sufficiency of the evidence, the propriety of the State's closing arguments, and the constitutionality of his court costs. We affirm.

## BACKGROUND

Appellant was charged by indictment with continuous sexual abuse of a young child. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that in February 2014, Tome Johnson and her two children moved into the home of Johnson's sister, Loca "Kai" Orr, and Orr's husband, Appellant. In April 2014, Johnson and Appellant were involved in a physical altercation that culminated in Appellant's beating Johnson in the head with a pistol in front of her seven-year-old daughter, A.R.[1] After the incident, Johnson called her mother-in-law and father-in-law to pick up her and A.R., and they called 911. During an investigation into the aggravated assault, A.R. made an outcry of sexual abuse by Appellant.

---

[1] To protect the victim's identity, we use initials to identify her.

Ultimately, the jury found Appellant "guilty" and assessed his punishment at imprisonment for life. This appeal followed.

<h2 style="text-align:center">E<small>VIDENTIARY</small> S<small>UFFICIENCY</small></h2>

In Appellant's first issue, he argues that the evidence is insufficient to support his conviction because no physical evidence or eyewitness testimony corroborated A.R.'s story, A.R.'s testimony was vague, and there is insufficient evidence to show that two or more acts of sexual abuse occurred during a period of thirty or more days.

**<u>Standard of Review and Applicable Law</u>**

The ***Jackson v. Virginia***[2] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315-16, 99 S. Ct. at 2686-87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S. W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. ***Brooks***, 323 S.W.3d at 899; *see **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." ***Jackson***, 443 U.S. at 326, 99 S. Ct. at 2793. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed 2d 642 (1982).

---

[2] 443 U.S. 307, 315-16, 99S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

To prove Appellant guilty of continuous sexual abuse of a child as charged in this case, the State was required to prove that during a period that was thirty or more days in duration, specifically from about February 6, 2014 through May 1, 2014, when Appellant was seventeen years of age or older and A.R. was younger than fourteen years of age, he intentionally or knowingly committed two or more of the following acts of sexual abuse: (1) engaging in sexual contact with A.R. by touching her genitals, (2) causing A.R. to engage in sexual contact by touching his genitals, (3) causing the penetration of A.R.'s female sexual organ by his finger, (4) causing the penetration of A.R.'s female sexual organ by his sexual organ, and (5) causing the penetration of A.R.'s mouth by his sexual organ. *See* TEX. PENAL CODE §§ 21.02 (b), (c)(2), (4) (West 2019); 21.11(a)(1), (c)(1) (West 2019); 22.021 (a)(1)(B)(i), (ii) (West 2019).

**Analysis**

Appellant first argues that the evidence is insufficient to support his conviction because no physical evidence or eyewitness testimony corroborated A.R.'s story. He contends the facts that A.R. told law enforcement where to look for semen but no semen was found, and that Appellant took photographs of her but no photographs were found casts reasonable doubt on A.R.'s testimony. Despite the lack of recovery of such evidence, a rational trier of fact could have found Appellant guilty beyond a reasonable doubt.

Based on the evidence in this case, the jury could have reasonably inferred that no semen was found because Appellant took measures to hide evidence of his offenses. In A.R.'s forensic interview, she said that the incidents occurred in the house and the shed, and she was lying on a purple "thing"[3] during at least one incident. Detective Jennifer Stockwell with the Smith County Sheriff's Office testified that law enforcement officers searched for semen in the shed and on the couch and surrounding area. They also looked for a purple blanket to check for semen but did not find one. However, Kai testified that a purple blanket or rug was in the house before the

---

[3] Throughout the trial, this item is referred to variously as a blanket, rug, or sheet.

fight between Johnson and Appellant. She said that after the fight, Appellant took her to a friend's house to stay the night, and the blanket or rug was gone when she returned the next day.

In A.R.'s forensic interview, she also said that Appellant took photographs of her in various states of undress. Detective Stockwell testified that the law enforcement officers collected cell phones and computers from the residence to look for the photographs but found no photographs matching A.R.'s description. They found a cell phone matching A.R.'s description of the one Appellant used to take the photographs, but it was missing its memory card. Kai testified that before she left to stay the night at her friend's house, she gave a cell phone containing an SD card to Appellant. When she returned home the next day, Appellant gave the cell phone to her without the SD card.

Based on all the evidence in this case, including the evidence tending to show that Appellant took measures to hide evidence before the search was conducted, we conclude that a rational trier of fact could have found Appellant "guilty" beyond a reasonable doubt despite law enforcement's failure to locate Appellant's semen and photographs of A.R. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S. W.2d at 186.

Appellant further argues that the evidence is insufficient because A.R.'s testimony was "impossibly vague" and inconsistent with her forensic interview, A.R. failed to identify Appellant in court, and the evidence does not show that two or more acts occurred during a period of thirty days or more. We disagree.

Regarding the alleged vagueness and inconsistency of A.R.'s testimony, we observe that she appeared somewhat reluctant at times and said she could not remember many of the details she gave in her forensic interview. However, we cannot conclude that such "vagueness" and "inconsistency" renders the evidence insufficient in this case. The evidence in this case, including the videotape of the forensic interview and the testimony of A.R. and others, contains all the facts necessary to support Appellant's conviction.

In her forensic interview, A.R. told Jennifer Subin that she was currently seven years old. She was living with her "Uncle Mike" when he "bashed [her] mommy's head open . . . with a butt of a gun." While she was living there, her uncle was touching her "no no spot"[4] during "special time." This happened more than five times. The first time was in her uncle's shed,

---

[4] When asked what she called the parts of her body no one should see or touch, A.R. said her "no no spots," and pointed to her bottom, breasts, and vagina. She later additionally referred to her vagina as her "tutu."

where he asked her to "do all kinds of stuff with his thing," like touch it, suck it, suck chocolate off it, rub lotion on it, and bounce it up and down. Also in the shed, A.R.'s uncle asked her to lie down, pulled down her pants and panties, "went back and forth," and had an orgasm. He also touched A.R.'s "no no spot" with his finger and put his finger inside her. In the bedroom, A.R.'s uncle made her put her mouth on his "thing." In the living room, A.R. was lying down and her uncle "st[u]ck his thing up in [her] thing." The last incident also occurred in the living room, when A.R.'s uncle had her bend over so he could "stick his wee wee through [her] legs and rock back and forth."

At trial, A.R. testified that she was currently twelve years old. In 2014, when she was around seven or eight years old, she, her mother, and her brother moved in with her uncle and aunt, Michael and Kai. When asked whether she saw her uncle, the man she knew as Michael, in the courtroom, she responded, "No." A.R. said her uncle started hurting her sexually a couple of weeks after they moved in, it happened "a whole bunch of times," and it continued the whole time they lived there. He touched her "tutu," which means her vagina, with his hands almost every night and his penis about twice. After the State played the video of the forensic interview, A.R. said she remembered making the statements in it and they were the truth. She said one day her mother and uncle were fighting, and he hit her mother in the forehead with the corner of a gun.

Although A.R.'s forensic interview and testimony alone are insufficient to establish Appellant as the perpetrator or show that the acts occurred in the requisite period of thirty days or more, her interview and testimony along with that of Johnson and Kai are sufficient to establish those facts. Johnson identified Appellant as the husband of her sister, Loca Kai Orr, which established Appellant as A.R.'s uncle. Johnson further testified that she and her children lived with Appellant and Kai from February 6, 2014 through April 30, 2014, and that Appellant hit her in the head with a pistol during a fight the day she moved out. Kai also identified Appellant as her husband and the person who hit Johnson with a gun. She further said that Johnson and her children lived with her and Appellant from February 8, 2014 through April 30, 2014. Together, this evidence supports an inference that Appellant is the "Uncle Mike" who committed this offense, and that he committed the acts during a period that was thirty or more days in duration

5

In the light most favorable to the jury's verdict, the evidence shows that Appellant committed many acts of sexual abuse against A.R from roughly February 22, 2014—a "couple of weeks" after she moved in, through April 30, 2014—the day she moved out, a period that is more than thirty days in duration. We conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant committed continuous sexual abuse of a young child. *See* TEX. PENAL CODE §§ 21.02 (b), (c)(2), (4); 21.11(a)(1), (c)(1); 22.021 (a)(1)(B)(i), (ii); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Brooks*, 323 S.W.3d at 899.

For the reasons stated above, we overrule Appellant's first issue.


### IMPROPER ARGUMENT

In Appellant's second and third issues, he argues that the trial court erred by allowing improper argument by the prosecutor.

### Standard of Review and Applicable Law

Permissible jury argument generally falls into one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel, or (4) a plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010). To preserve error in prosecutorial argument, a defendant must pursue his objections to an adverse ruling. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). The usual sequence is an objection, a request for an instruction to disregard, and a motion for mistrial. *Id.* However, this sequence is not essential to preserve complaints for appellate review. *Id.* The essential requirement is a timely, specific request that the trial court refuses. *Id.* A request for an instruction to disregard is essential only when the instruction could have resulted in the continuation of the trial by an impartial jury. *Id.* If an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for mistrial is the only essential prerequisite to presenting the complaint on appeal. *Id.*

### Striking at Defendant over Defense Counsel's Shoulders

In Appellant's second issue, he argues that the trial court erred by allowing the prosecutor to strike at him over the shoulders of his defense counsel. Argument that strikes at a defendant over the shoulders of defense counsel is improper. *Davis*, 329 S.W.3d at 821. A prosecutor runs a risk of improperly striking at a defendant over the shoulders of counsel when he makes an argument in terms of defense counsel personally that explicitly impugns defense counsel's

character. ***Mosley v. State***, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Legitimate arguments by defense counsel cannot serve as a basis for permitting prosecutorial comments that cast aspersion on defense counsel's veracity. ***Id.***

Here, Appellant complains about the prosecutor's response to defense counsel's argument regarding the lack of injuries found to A.R.'s body. At trial, the sexual assault nurse examiner (SANE) who examined A.R. testified that she did not find injuries on her. She also testified that it is uncommon to find injuries during examinations because of the rapid healing rate of the genitalia. In defense counsel's closing argument, he argued that if the allegations against Appellant were true, the SANE would have found injuries to A.R. In the State's final closing argument, the prosecutor argued in part, without objection, the following:

> Mr. Roberson.[5] I guess I should say Dr. Roberson, because he can now testify better than a SANE nurse and he is now an expert on child sexual abuse trauma. In fact, you can probably discount everything that the SANE nurse said. You should probably discount everything that Jennifer Subin said, with her almost two thousand different forensic interviews.
>
> No, see, Dr. Roberson wants you to think that if there is some type of sexual abuse, it's going to always leave a mark, flying in the face of everything that the SANE nurse told you on her decades old career as a sexual assault nurse examiner. As a medical professional, not the defense attorney, but a medical professional whose job it is to find the truth, she tells you that that little body, that seven-year-old girl heals, and that is the only reason why she lacks trauma, not because it didn't happen to her.

Appellant argues that the prosecutor exceeded the boundaries of proper argument by calling defense counsel "Dr. Roberson" and "suggesting that defense counsel was misrepresenting the evidence regarding trauma left on crime sex victims." He acknowledges that this issue was not preserved but argues that "this is a rare situation where unpreserved error rises to the level of reversible error." Appellant cites no authority for the proposition that this Court can consider an improper argument issue that was not preserved by objection, request for instruction to disregard, or motion for mistrial. *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain clear and concise argument with appropriate citations to authorities); *see also **Archie**,* 221 S.W.3d at 699 (defendant must pursue objection to adverse ruling to preserve argument error). We conclude that Appellant failed to preserve this issue for our review.

---

[5] The record shows that Appellant's defense counsel was Mr. Clifton L. Roberson.

Furthermore, even if Appellant preserved his issue, we could not grant him relief because the prosecutor's argument was not improper. Defense counsel's argument that the SANE would have found injuries if the allegations were true was improper because there was no evidence of that fact and no evidence from which such a deduction could be made. *See Davis*, 329 S.W.3d at 821. The prosecutor's argument pointed out to the jury that defense counsel's statement had no basis in the evidence and was therefore proper as an answer to the argument of opposing counsel. *See id.*

For the reasons stated above, we overrule Appellant's second issue.

## Provoking a Reaction from Defendant and Comment on Nontestimonial Demeanor

In Appellant's third issue, he argues that the trial court erred by denying his objection to the prosecutor's provoking a reaction from him, in violation of his Fifth Amendment privilege against self-incrimination, and then commenting on his demeanor. Under the Fifth Amendment to the United States Constitution, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. A defendant's nontestimonial demeanor is irrelevant to the issue of his guilt. *Good v. State*, 723 S.W.2d 734, 737 (Tex. Crim. App. 1986). Prosecutorial argument concerning a defendant's nontestimonial demeanor can be improper. *See id.*

The record in this case shows that the following occurred during the State's closing argument:

> PROSECUTOR: [A.R.] has to sit here next to this man, and she has to go into that shed every day and feel that hand pull her hand to his penis. She can feel him taking off her clothes and pulling down her shorts.
>
> That disgust you're feeling right now, that hole in your belly, that is what makes his penis rise and fall like she described for you in State's 18.
>
> DEFENSE COUNSEL: Judge, let the record reflect he's standing by my client and making those motions and making that statement.
>
> TRIAL COURT: The record will reflect that he was doing what he's doing. The jury was looking at him.
>
> DEFENSE COUNSEL: I have to make it for record purposes, Your Honor.
>
> TRIAL COURT: You made it for the record. Go ahead, Mr. Jiral.
>
> PROSECUTOR: What sickens us as a society, as people, as human beings, turns him on, gives him an erection, gives him what she called an orgasm.

8

. . . .

And so this case is simple. There is absolutely no other verdict you can render that is just. Sign guilty, find that man guilty of exactly—

Don't shake your head at me.

DEFENSE COUNSEL: Judge, I'm going to object to him doing that.

PROSECUTOR: Don't get aggressive—

BAILIFF: Sir—

DEFENSE COUNSEL: No, no—

TRIAL COURT: Okay. Mr. Roberson—

DEFENSE COUNSEL: Judge, he was antagonizing him.

TRIAL COURT: No. You listen to me. If I hear one more word out of him, I'm going to recess the jury.

DEFENSE COUNSEL: I understand, Judge, but for record purposes I have to make—

TRIAL COURT: It's all overruled. Mr. Jiral is making an argument. He can point at the defendant. He's arguing. If the defendant says anything, there'll be a break.

DEFENSE COUNSEL: Judge, I understand what the Court is saying, but I know he can point at him, but he cannot walk over to him and put his finger in his face, Judge. It's antagonizing.

TRIAL COURT: Mr. Roberson, it's argument. It's all overruled.

DEFENSE COUNSEL: Judge, I'm just making a record, that's all.

TRIAL COURT: Well, it's made.

DEFENSE COUNSEL: Yes, Your Honor.

Appellant argues that the prosecutor's comments and actions were designed to provoke a reaction from him in front of the jury and were tantamount to forcing him to testify in violation of the Fifth Amendment. Appellant cites no caselaw, and we find none, in which an appellant was granted relief under the Fifth Amendment based on a prosecutor's provoking a reaction from him in front of the jury. However, we cannot say that, in a proper case, such relief is not possible. Certainly, it should not be the practice of prosecutors to intentionally provoke reactions from defendants in the hopes that they will be convicted on that basis rather than their guilt of the charged offense. Nonetheless, we do not reach the merits of Appellant's issue in this case because he did not preserve it.

To preserve an issue for appellate review, the record must show that a timely and sufficiently specific complaint was made to the trial court. *See* TEX. R. APP. P. 33.1(a)(1). A general or imprecise objection will not preserve error unless the legal basis for the objection is obvious to the trial court and opposing counsel. *Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim, App. 2016).

Here, Appellant objected to the following acts of the prosecutor: (1) "doing that," without stating what "that" was, (2) antagonizing him, (3) pointing at him, and (4) walking over to him and putting his finger in his face. However, Appellant did not state a legal basis for these objections, and we cannot say that a Fifth Amendment complaint should have been obvious to the trial court and opposing counsel. *See* TEX. R. APP. P. 33.1(a)(1); *Vasquez*, 483 S.W.3d at 554. Because Appellant failed to preserve his Fifth Amendment complaint for our review, we overrule the portion of his third issue regarding that complaint.

Appellant likewise failed to preserve his complaint that the prosecutor's comments on his nontestimonial demeanor constitute improper argument. *See* TEX. R. APP. P. 33.1(a)(1). Furthermore, even if Appellant objected on that basis at trial, his objection would likely have been correctly overruled. The prosecutor's statements related to Appellant's demeanor—"Don't shake your head at me" and "Don't get aggressive"—appear to be directed to Appellant rather than the jury, and are therefore not jury argument at all.[6] Therefore, we overrule the portion of Appellant's third issue regarding improper comment on his nontestimonial demeanor.

At the end of Appellant's third issue, he asserts that the prosecutor's closing arguments violated federal due process requirements. The prosecutor's actions here are questionable but are not entirely apparent from the record. If the record were clearer, the prosecutor's actions and sidebar comments might support a lack of due process and right to a fair trial complaint. However, the issue was not preserved by objection in the trial court. *See id.*; *see also* *Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012) (non-due-process objections including badgering, sidebar, argumentative, invading province of jury, and mischaracterization insufficient to preserve due-process, fair-trial complaint). Therefore, we overrule the due process portion of Appellant's third issue.

---

[6] We note that the prosecutor did not refer to Appellant's nontestimonial demeanor in his argument to the jury.

## UNCONSTITUTIONAL COURT COSTS

In Appellant's fourth issue, he argues that the trial court erred by assessing an unconstitutional time payment fee under former Section 133.103 of the Texas Local Government Code as a court cost. Act of June 2, 2003, 78th Leg., R.S., ch. 209, § 62, sec. 133.103, 2003 Tex. Gen. Laws 979, 996-97 (amended and redesignated 2019) (current version at TEX. CODE CRIM. PROC. ANN. art. 102.030 (West Supp. 2020)). Several courts, including this one, have held subsections (b) and (d) of Section 133.03 unconstitutional. *See, e.g.*, *Irvin v. State*, No. 12-19-00347-CR, 2020 WL 5406276, at *7 (Tex. App—Tyler Sept. 9, 2020, no pet. h.) (mem. op., not designated for publication); *Ovalle v. State*, 592 S.W.3d 615, 618 n.1 (Tex. App.—Dallas 2020, pet. filed); *Simmons v. State*, 590 S.W.3d 702, 712 (Tex. App.—Waco 2019, no pet.); *Dulin v. State*, 583 S.W.3d 351, 353 (Tex. App.—Austin 2019, no pet.); *Johnson v. State*, 573 S.W.3d 328, 340 (Tex. App.—Houston [14th Dist.] 2019, no pet.). However, we do not agree that the trial court assessed the time payment fee in this case.

The judgment in this case shows $579.00 in court costs. The bill of costs likewise shows $579.00 in court costs and states the following:

> An additional time payment fee of $25.00 will be assessed if any part of a fine, court costs, or restitution is paid on or after the date the judgment assessing the fine, court costs or restitution is entered. ***See Texas Local Government Code, Section 133.103.***

Although the bill of costs states that the time payment fee could be assessed, the record does not show that it was assessed.[7] Because the record does not show that the time payment fee was assessed, we conclude Appellant's argument is without merit. Accordingly, we overrule his fourth issue.

## DISPOSITION

Having overruled Appellant's first through fourth issues, we ***affirm*** the trial court's judgment.

---

[7] At oral argument, the State conceded that the time payment fee here is unconstitutional and will not be assessed.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered October 30, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley,*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 30, 2020

NO. 12-19-00398-CR

**MICHAEL RAY ORR,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

___

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-1663-18)

___

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*