**AFFIRMED and Opinion Filed August 21, 2024**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00387-CR**

**LLOYD DAVID DEMUS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-23-00001-T**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Carlyle

A jury found Lloyd David Demus guilty of manslaughter and sentenced him to 75 years' imprisonment. On appeal, Demus challenges the sufficiency of the evidence to support his conviction and eight of the trial court's rulings. We affirm the trial court's judgment in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**I.** **The evidence was sufficient to show Demus drove the car that killed S.G.**

We review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, giving full play to the factfinder's responsibility to

resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from basic facts to ultimate facts. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). It is well established that the State may prove identity by circumstantial evidence, coupled with all reasonable inferences from that evidence. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

Demus ran a stop sign going 60 miles per hour in a residential neighborhood at 7am on a school day while high on PCP. He crashed into Juan Gomez's car as Gomez drove his three siblings to get doughnuts before school; the crash killed his little brother and injured the others. Demus tried to flee on foot but was hampered by his ankle having been nearly severed in the crash.

Demus contests the sufficiency of the State's evidence by asking this court to ignore what that evidence established and to reweigh the evidence. He places particular focus on his testimony that he was asleep in the passenger seat while his sister, who died after the wreck but before trial, crashed into S.G.'s car and left the scene undetected. Demus's testimony directly contradicts his admission in the hospital to police that he was driving and caused the fatal accident. He explained the shift in his story by suggesting that he did not want to get his sister in trouble while she was alive, but since she was dead, that was no longer an obstacle.

While in the hospital, Demus asked to meet with Detective Kenneth Watson, and Watson recorded their conversation. Initially, Demus said his friend Jeffrey Bennett was the driver, but when Detective Watson told him S.G. died in the crash,

Demus confessed he drove and crashed the car. The conversation continued with Demus demonstrating his ability to recall details before and after the wreck, including where the driver side airbag hit him and his desire to flee the scene despite suffering a compound fracture of his ankle that one witness described as "severed" and "barely hanging on."

The State presented substantial identity evidence including (1) DNA evidence from the driver's side airbag, gear shift, and driver's side window; (2) expert testimony that the DNA profile from the vehicle matched Demus's DNA profile; (3) the most conservative statistic for matching the DNA profile from the vehicle to a randomly selected person "was less than one in 10 trillion"; (4) expert testimony connecting the spiderweb crack on the driver's side windshield to Demus's forehead injury; (5) expert testimony confirming the car's airbag system was functional and concluding it didn't deploy on the passenger side because the seat was unoccupied; (6) witnesses identifying Demus as the driver and sole occupant; and (7) Demus's attempt and plea for help to flee the scene.

We hold the State provided sufficient evidence from which a rational jury could conclude Demus was the driver and reject Demus's first issue.

II. **The trial court did not abuse its discretion by admitting lay witness testimony describing Demus's ankle injury.**

In his second and third issues, Demus contends the trial court abused its discretion when it permitted Dwayne Giddings to testify over his objection about the

ankle injury Demus sustained in the collision because the testimony was speculative and because Giddings was not qualified as an expert.

We disregard nonconstitutional errors that do not have a substantial injurious effect or influence on the jury's verdict, and examine the entire record in our analysis. TEX. R. APP. P. 44.2(b); *see Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Only when we are fairly assured that the error did not influence the jury or had but a slight effect will we conclude that the error was harmless. *Id.* Assuming error, admitting Giddings's testimony about Demus's ankle injury was harmless. *See* TEX. R. APP. P. 44.2(b).

Giddings was startled by the booming crash and was one of the first witnesses to the scene in front of his house. A licensed commercial truck driver, Giddings spent the bulk of his testimony describing the scene, including finding Demus in the middle of the street with his ankle nearly severed and pulling Demus out of the street and onto the curb. Giddings answered two questions giving his opinion about Demus's ankle injury, which he purported to base on his background as a trucker seeing numerous wrecks. Giddings's testimony on this matter was not exactly clear, and it was clear he did not know which foot was Demus's "driving foot," which would have mattered given that he seemed to suggest he had known of vehicle accidents causing similar ankle injuries to a driver's "driving foot." In any event, Giddings final statement on the matter was, "That's just experience."

Out of 260 pages of the State's witness examinations, only slightly more than 2 related to Giddings's trucking experience and his opinion that Demus's ankle injury indicated an injury to a driver. *See Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) (considering the number of pages that erroneous testimony took up relative to the rest of the testimony). The State did not refer to Giddings's testimony about the ankle injury at any other point in trial and causation of Demus's ankle injury was not at issue. The extent to which Giddings's ankle injury testimony put Demus behind the wheel does not rise to the level of affecting Demus's substantial rights. *See* TEX. R. APP. P. 44.2(b). We reject Demus's second and third issues.

### III. The trial court did not abuse its discretion when it overruled Demus's other evidentiary objections.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). Trial courts have broad discretion in their evidentiary rulings and are usually in the best position to make the call on whether to admit or exclude certain evidence. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We uphold the trial court's ruling if it is reasonably supported by the evidence and is correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App.

2000). We reverse a trial court's ruling on the admissibility of evidence only where the court abused its discretion and the error harms appellant. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); TEX. R. APP. P. 44.2(b).

In his fourth issue, Demus argues the trial court erred when it overruled his objection when the State asked Detective Watson: "In your opinion, did the defendant recklessly cause the death of [S.G.] by operating a motor vehicle at an unreasonable speed for the conditions?" Demus timely objected that the State's question called for speculation and for the detective to give an opinion on an ultimate issue. Demus has not briefed his speculation argument, *see* TEX. R. APP. P. 38.1(i), and opinions on ultimate issues are permissible. TEX. R. EVID. 704; *see Ex parte Nailor*, 149 S.W.3d 125, 134–35 (Tex. Crim. App. 2004).

In his fifth issue, Demus argues the trial court erred when it overruled his objection to evidence of his non-cooperation when the State executed a warrant to get his buccal swab. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. Irrelevant evidence is inadmissible. TEX. R. EVID. 402. "Evidence does not need to prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving a fact of consequence." *Anguiano v. State*, No. 05-22-00680-CR, 2024 WL 885042, at *5 (Tex. App.—Dallas Mar. 1, 2024, no pet.) (mem. op., not designated for publication).

Haley Young, a Dallas Police Department crime scene analyst, testified that Demus "was not enthused about having to have a buccal swab done" and that he had to be restrained while it was performed. On appeal, Demus argues the danger of unfair prejudice outweighs the probative value of Young's testimony. At trial, Demus did not object that the danger of unfair prejudice outweighed the probative value of Young's testimony. The point of error on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Thus, Demus has not preserved his rule 403 argument. *See* TEX. R. APP. P. 33.1(a)(1).

Demus did, however, preserve his objection to relevance. The State argues it was relevant because it was an act "designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial," showing consciousness of guilt. *See Wilson v. State*, No. 04-02-00052-CR, 2003 WL 21418463, at *6 (Tex. App.—San Antonio 2003, not pet.) (mem. op., not designated for publication) (Richardson, J.) (citing *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994)). Though it leans more to the "small" part of the phrase "small nudge," the evidence that Demus was uncooperative during a buccal swab some two years after the incident could support a conclusion that Demus was trying to "reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial." *See id.*; *Gonzalez*, 544 S.W.3d at 370.

In his sixth issue, Demus similarly argues the trial court abused its discretion when it overruled his objection to Detective Watson's testimony about the effects of PCP on the basis that it was repetitive, "not material," and "has no probative value." *See* TEX. R. EVID. 403. To the extent Demus argues on appeal that this evidence constitutes impermissible bolstering, he did not make this argument at trial and therefore did not preserve it for our review. *See* TEX. R. APP. P. 33.1(a)(1).[1]

Dr. Simonson testified that when someone is using PCP, they are easily agitated, difficult to restrain, and have increased resistance to pain. Dr. Simonson also testified that Demus admitted to using PCP that morning, that in Demus's drug screen upon admission to the trauma center, his results were presumptively positive for PCP use, that he had blood pressure of 186 over 121, and that his heart rate was 122 beats per minute.

In contrast, Detective Watson testified that PCP "dissociates the brain's ability to feel pain," that someone who was using it could break their legs and still run down the street, that it is a dangerous drug, that officers cannot "inflict enough pain" to stop someone who is using it, and that he could run over someone using PCP with his car and that they would not feel it. Detective Watson further explained that PCP elevates both blood pressure and pulse, that average blood pressure is 120 to 140

---

[1] In any event, a bolstering objection may not have preserved anything for our review either. *See Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009); *Bellard v. State*, No. 05-21-00633-CR, 2023 WL 1097769, at *6 n.4 (Tex. App.—Dallas Jan. 30, 2023, pet. ref'd) (mem. op., not designated for publication).

over 70 to 90, that the average heart rate is up to 90 beats per minute, and that Demus's vitals were consistent with PCP use.

Though there was some overlap in what Detective Watson and Dr. Simonson testified to, Detective Watson gave more detail in several regards. As a result, there was no danger of needlessly cumulative evidence that could have outweighed the probative value of his testimony and the trial court did not abuse its discretion when it overruled Demus's rule 403 objection.

In his seventh issue, Demus argues the prosecutor impermissibly said during punishment arguments that S.G.'s sister, also a passenger in the vehicle, suffered a "head fracture." However, the medical records admitted into evidence showed that S.G.'s sister suffered a parietal bone fracture. A parietal bone fracture is a head fracture. *See* STEDMAN'S MEDICAL DICTIONARY FOR THE HEALTH PROFESSIONS AND NURSING 1251 (7th ed. 2011) ("[P]arietal bone . . . A flat, curved bone . . . at either side of the vault of the cranium."). The trial court did not err.

IV. **There was no harmful error in the trial court's refusal to issue a curative instruction or to grant a mistrial after sustaining Demus's outside-the-record objections to the prosecutor's closing argument at punishment.**

In his eighth and ninth issues, Demus argues the trial court erred when it denied his requests for an oral instruction to disregard the State's argument and for a mistrial. The prosecutor told the jury during closing argument that, "[E]veryone here has had cases – manslaughter cases that we've been involved with 2:00 a.m. on

75[.]" Demus timely objected that the State was arguing outside the record and the trial court promptly sustained his objection.

Assuming the court's refusal to instruct the jury to disregard was error, we must determine whether it affects Demus's substantial rights. *See* TEX. R. APP. P. 44.2(b). The prosecutor's brief, incomplete, and vague reference to middle-of-the-night manslaughter cases on a dangerous Dallas highway did not, as Demus suggests but does not explain, go "right to the ultimate issue of the case." At best, it is an inapt comparison to the wreck in this case, which happened in a residential area as children went to school. The facts of this case are far worse than the vague hypothetical the prosecutor offered, and we cannot find the court's failure to instruct the jury to disregard it to have affected Demus's substantial rights.

Finally, to evaluate whether the trial court abused its discretion by denying a mistrial for improper jury argument, we balance (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instructions by the judge, and (3) the strength of the evidence supporting the punishment. *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). As noted, the magnitude of the remarks was small and occurred during punishment arguments, yet the court declined Demus's request to disregard. The objectionable statement did not involve a comment on Demus's failure to testify or his non-testimonial behavior during trial. *See id.*; *Good v. State*, 723 S.W.2d 734, 738 (Tex. Crim. App. 1986) (en banc). And, the evidence in support of the punishment was strong, including two prior felony

enhancement paragraphs and the death of a child in this crash. Though the jury recommended a 75-year sentence, we cannot conclude the trial court erred when it denied Demus's motion for a mistrial in light of these factors.

## V.    Conclusion

Having overruled all of Demus's issues on appeal, we affirm his conviction.


/Cory L. Carlyle/

CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230387F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LLOYD DAVID DEMUS, Appellant

No. 05-23-00387-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas Trial Court Cause No. F-2300001-T. Opinion delivered by Justice Carlyle. Justices Partida-Kipness and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered August 21, 2024